JOHN E. PECK ET AL. *v.* MICHAEL D. MCCLURG ET AL.
(5737)

BIELUCH, STOUGHTON and NORCOTT, Js.

Argued April 21—decision released October 4, 1988

*Andrew Brand,* with whom, on the brief, was *Lloyd Langhammer,* for the appellant-appellee (defendant).

*John C. Archambault,* for the appellees-appellants (plaintiffs).

BIELUCH, J. This action for damages stemmed from the breach of a conditional sales agreement for the purchase of the capital stock of a restaurant corporation. The plaintiffs, John E. Peck, Eugene R. Peck and David Costner, the principals of the corporation which had owned the restaurant, commenced this action in three counts to recover from the defendant, individually and in his capacity as administrator of the estates of his mother and stepfather, (1) the sum of $70,000 due under the agreement, (2) funds due pursuant to an assignment of the proceeds of the wrongful death claims of the

estates of his mother and stepfather, and (3) obligations due under an indemnification agreement and a promissory note executed by the defendant. The defendant denied that he was obligated to pay the sums claimed and, in two special defenses, he alleged that, by exercising their right to terminate the agreement and regain control of the operation of the restaurant, the plaintiffs (1) had rescinded the contract, and (2) had elected the exclusive remedy they wished to pursue. After a trial to the court, judgment was rendered for the plaintiffs in the amount of $71,548.15. The defendant has appealed and the plaintiffs have cross appealed. We find error on the appeal, and no error on the cross appeal.

The following facts are necessary to an understanding of the issues on appeal. The defendant Michael D. McClurg was employed as a cook at "Gentlemen Jim's Restaurant" in April, 1983. The restaurant was the only asset of Three Star Corporation, with its capital stock owned by the plaintiffs, the principals of the corporation. The plaintiffs had purchased the stock from the restaurant's previous owner, Mary Raptis, who held the stock as security for a note executed by the plaintiffs in the amount of $145,000. The sum of $132,000 was then due and owing on the note.

The defendant discussed with the plaintiff Eugene R. Peck the proposed purchase of the restaurant and, during June and July, 1983, a proposal for the defendant to purchase the capital stock of the corporation for $277,000, with a credit of $30,000 to be deducted against accounts payable was considered. The defendant, on June 12, 1983, gave the plaintiffs $15,000 as a deposit. This proposed agreement was not consummated. Further discussions took place, however, and, on September 2, 1983, an agreement was signed by the parties regarding the conditional sale of the stock by the plaintiffs to the defendant. The purchase price was $277,000 payable by the defendant with $15,000 as a

deposit which was previously paid, $70,000 payable within thirty days, a $60,000 note payable in one year, assumption of the note in the amount of $132,000 payable to Mary Raptis, and adjustments of $4800 to be paid by the defendant to cover a utility security deposit, prepaid insurance, and the liquor permit fee. The defendant signed a promissory note to the plaintiffs for $64,800, an assignment of his interest as beneficiary in wrongful death actions involving his mother and stepfather in the amount of $70,000, and an "Indemnification Agreement" to "indemnify and hold harmless" the plaintiffs on the outstanding note to Mary Raptis assumed as part of the purchase price. At the time of the execution of these documents, the defendant relied upon a bank balance of the corporation in the amount of $7500, and assumed it would cover the outstanding obligations of the business. All parties considered this to be a "turnkey" operation with no adjustment for stock, inventory, cash on hand or outstanding debts.

Shortly after the defendant assumed operation of the restaurant, he became aware of various outstanding bills and discovered unpaid checks issued by the corporation to pay its debts. The defendant soon encountered financial difficulties because of insufficient funds in the corporate checking account to pay outstanding obligations. As a result of the demands of creditors, the defendant failed to pay the plaintiffs any further sums as provided in the documents executed on September 2, 1983. The defendant also failed to pay over the funds obtained from the estates of his mother and stepfather as a result of a settlement made on September 16, 1983. On November 10, 1983, the defendant advised the plaintiffs that he wanted to be released from his obligations under the agreements. On November 20, 1983, the defendant relinquished control of the restaurant permanently.

By December 1, 1983, the plaintiffs had resumed control and operation of the restaurant. They were required to pay for various obligations incurred during the period the defendant operated the restaurant in the amount of $18,415.81. Additionally, Raptis brought suit against the plaintiffs on the note she held as collateral, and the plaintiffs were compelled to pay her $66,357.34 in settlement of their obligations to her.

The defendant's breach of the conditional sales contract for the purchase of the plaintiffs' stock was not disputed. After finding no merit to either of the defendant's two special defenses, the only question for the trial court to resolve was the amount of damages the plaintiffs were entitled to recover as a result of the breach.

The plaintiffs sought to recover on all of the obligations executed by the defendant, plus reimbursement for obligations incurred by the defendant that they paid in the amount of $18,415.81. The total sum claimed by the plaintiffs was $233,758.13, in addition to the $15,000 deposit, for a total sum of $248,758.13.

The court found that such a recovery by the plaintiffs, after they regained control and possession of the business approximately three months after the sale, would result in unjust enrichment. The court held that "[t]he plaintiffs are entitled to the damages they sustained as of the time of the breach, and they would not be entitled to recover in full on the notes or other obligations executed by the defendant."

The court concluded that the evidence established that the plaintiffs could recover the sum of $18,415.81 for the obligations they had paid which were incurred by the defendant during his operation of the restaurant, and could recover the sum of $1775 for the costs of the various adjustments from which the defendant had also benefitted during that period. The court also

held that the defendant was obligated to the plaintiffs in the amount of $66,357.34 under the indemnity agreement for payment of the assumed note held by Raptis. From the total of $86,548.15, the previously paid deposit of $15,000 was deducted and judgment was thereafter rendered in the amount of $71,548.15. This appeal and cross appeal followed.

The defendant first claims on appeal that the plaintiffs were not entitled to judgment because, by regaining control and operation of the restaurant, they elected their remedy and foreclosed their right to bring an action for damages. We find no merit in this claim, and agree with the trial court's conclusion that the plaintiffs, following the defendant's breach, were placed in the position of having to reacquire the operation of the business to mitigate their damages. The defendant argues that the management agreement contained in the contract provided this choice of remedies for the plaintiffs. A contract, however, should not be construed to excuse a party from a duty to use reasonable care to minimize its damages. *Newington* v. *General Sanitation Service Co.,* 196 Conn. 81, 85, 491 A.2d 363 (1985).

The dispositive issue on this appeal, and also raised on the plaintiffs' cross appeal, is the trial court's fundamental error in its assessment of damages. The measure of damages for breach of a sales contract is the difference between the contract price at the time of sale and the value of the property at the time of the breach of the contract. *Loda* v. *H. K. Sargeant & Associates, Inc.,* 188 Conn. 69, 82, 448 A.2d 812 (1982). These damages represent the loss of the bargain, and the injured party should be placed in the position he would have been in had the contract been fully performed. Id.; *Spera* v. *Audiotape Corporation,* 1 Conn. App. 629, 633, 474 A.2d 481 (1984). Damages are to be calculated as of the date of the breach. *Spera* v. *Audiotape Corporation,* supra.

The proper measure of damages in the case before us would be the difference between the purchase price of the restaurant's stock under the conditional sales contract, $277,000, less the value of that stock at the time of the defendant's undisputed breach of that contract approximately three months later. The record before us is devoid of any indication of the value of the restaurant's stock at the time of the defendant's breach. The trial court must, therefore, rehear this matter solely on the issue of the assessment of damages.

To the extent that they may recur at the rehearing, we must address the plaintiffs' claim as to the proper measure of their recovery, and the trial court's finding as to the plaintiffs' recovery under the indemnification agreement signed by the defendant at the time of sale of the restaurant's stock. The plaintiffs claim that they are entitled to recover in full on the conditional sales contract, and that they are entitled to reimbursement for those obligations incurred by the defendant which they paid after regaining control of the restaurant. In other words, the plaintiffs seek full payment for the stock of the restaurant they now own and control, plus reimbursement for costs. They are not entitled to such an unconscionable return on the conditional sales agreement they had with the defendant. Not only would this result violate the proper formula for assessing damages in such a case, but the plaintiffs would be unjustly enriched at the defendant's expense. See *National CSS, Inc.* v. *Stamford,* 195 Conn. 587, 597, 489 A.2d 1034 (1985). We cannot, by law or on the facts before us, sanction such a grossly unfair result.

Neither can we support the trial court's finding with respect to the defendant's obligation under the indemnity agreement. As part of the purchase price of the stock, the defendant assumed payment of the outstanding note to Raptis, secured by the stock as collateral,

and signed the indemnity agreement to guarantee payment of the plaintiffs' collateral obligation of $132,000. Raptis, the previous owner of the restaurant, held its capital stock as collateral for payment of her note. The evidence established that the plaintiffs, as a result of the settlement of the suit brought by Raptis, were required to pay her the sum of $66,357.34. The trial court found that the defendant was obligated to reimburse the plaintiffs for that sum in accordance with the terms of the agreement to pay the collateral note to Raptis securing the underlying obligation of the plaintiffs on that note. We disagree.

An indemnity agreement, like any other contract, must be construed to effectuate the intent of the contracting parties, and, in ascertaining that intent, it is appropriate to look to the language of the agreement interpreted in light of the situation of the parties and the circumstances connected with the transaction. *Burr* v. *Lichtenheim,* 190 Conn. 351, 358, 460 A.2d 1290 (1983); *Leonard Concrete Pipe Co.* v. *C. W. Blakeslee & Sons, Inc.,* 178 Conn. 594, 598, 424 A.2d 277 (1979); *Powel* v. *Burke,* 178 Conn. 384, 387, 423 A.2d 97 (1979). In accordance with these principles, an indemnity agreement will be construed to cover such losses as appear to have been intended by the parties. *Leonard Concrete Pipe Co.* v. *C. W. Blakeslee & Sons, Inc.,* supra, 599.

The defendant signed the indemnity agreement at the time he agreed to assume a debt of the plaintiffs as part of the purchase price of the restaurant's stock. The execution of this agreement was a part of the conditional sales agreement for the purchase of the restaurant's capital stock. The defendant, as the new owner of the restaurant, assumed responsibility for payment of this debt and agreed to indemnify and hold the plaintiffs harmless, as the sellers of the restaurant's capital stock, from any claim or loss on the debt

assumed as part of the purchase price. The loss from which the plaintiffs would be protected was clearly set forth in the agreement: "[A]ny claims, actions, suits, judgments and liabilities pursuant to [the] promissory note from [the plaintiffs] to Mary Raptis . . . [and] I understand, agree and assume all obligations pursuant to said note and promise to pay said note in accordance with its terms and tenure."

Following the defendant's breach, the plaintiffs regained possession of the restaurant and conditional ownership of its capital stock, held as collateral by Raptis for payment of her note. When Raptis brought suit for payment of the outstanding indebtedness, the plaintiffs were obligated to make payment as the principal obligors on the note which the defendant had merely assumed to pay as part of the purchase price. They were not, however, entitled to be "indemnified" by the defendant as a result of making this payment. *"[I]ndemnity involves a claim for reimbursement in full from one on whom a primary liability is claimed to rest . . . ."* (Emphasis added.) *Kaplan* v. *Merberg Wrecking Corporation,* 152 Conn. 405, 412, 207 A.2d 732 (1965). After the defendant breached the conditional sales agreement and the plaintiffs regained control of the business, the defendant was not liable as "indemnitor" on the note. In addition, the plaintiffs did not prove that they suffered any loss by paying on the suit brought by Raptis. As owners once again of the restaurant, the plaintiffs completed their payment for its acquisition by paying the balance due on the purchase note to Raptis for their reacquired capital stock, which had been held by Raptis as collateral for payment of the note. They proved no loss by resuming payment on the note, which loss is an essential element in any indemnity claim. The plaintiffs are not entitled to be indemnified by the defendant as a result of the suit for payment of their note.

There is error on the appeal, the judgment is set aside and the case is remanded for further proceedings on the issue of damages. There is no error on the cross appeal.

In this opinion the other judges concurred.