[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT
In this case, Dollar Rent A Car Systems, Inc. (Dollar) has sued Special Olympics International, Inc. (SOI) and seeks indemnification of its costs in defending an underlying automobile-accident personal injury action. SOI has now filed a motion for summary judgment claiming "there is no legal ground upon which Dollar can sustain its indemnification claim." Dollar characterizes the action it has brought as "a claim for contract and common law indemnification."
Dollar also filed a motion for summary judgment on its claims for contractual and common law indemnification.
Dollar and SOI entered into a sponsorship agreement whereby Dollar agreed to pay cash and make in-kind donations to SOI in return for the right to publicize Dollar as Special Olympics Sponsor and to use the Special Olympics name and Trademarks. The agreement between Dollar and SOI was entered into in the summer of 1991 for games which were to take place in 1993 and 1995. As a sponsor SOI granted Dollar exclusive sponsor rights as to rental cars. The sponsorship agreement contains an "indemnification clause" which states; CT Page 2856
 "SOI shall indemnify (Dollar) and hold (Dollar) harmless for any loss, liability, damage, . . . cost or expense . . . arising out of any negligent or intentional act, error, delay or omission by SOI or any of its agents or employees, in performing or in failing to perform any service obligation or duty pursuant to this Agreement."
An entity called the 1995 Special Olympics World Summer Games Organizing Committee, Inc. (GOC), leased a vehicle from Dollar and SOI allowed Dollar to offset its cash sponsorship fee obligations under the previously mentioned sponsorship agreement between Dollar and SOI by the value of the vehicle it had provided to GOC. GOC then provided the car to an employee of GOC, Ms. Quezada. Ms. Quezada was using the vehicle to drive home on May 24, 1994 and veered off the road and hit an auxiliary state trooper, Phillip Mingione, who later died of his injuries. The officer's wife first sued Ms. Quezada then she sued Dollar, the owner and lessor of the car Quezada was driving, and GOC, Ms. Quezada's employer. As noted, Dollar in this indemnification action seeks relief from its expenses and potential liability in the underlying and ongoing suit of Mingione v. Dollar Rent A CarSystems, CV95-0051524S.
 1.
The standards to be applied on a motion for summary judgment are well known. Such a motion should be granted if the affidavits and material filed pursuant to the motion indicate that there is no genuine issue as to any material fact. Also, any evidence before the court on such a motion must be viewed in a manner most favorable to the non-moving party, Maffucci v. Royal Park Ltd.Partnership 243 Conn. 552, 554 (1998). If there is a genuine issue of fact, the court must not decide it since this would deprive a litigant of its constitutional right to a jury trial. On the other hand, if no such issue exists the motion should be granted to ensure that a party is not subjected to the inconvenience and expense of frivolous or unsubstantiated litigation.
 2.
It is difficult to understand the basis of the common law indemnification claim against SOI by Dollar, at least insofar as it is based on an active-passive theory of negligence. Where a party is accused of negligence the usual rule is that there is no CT Page 2857 right of indemnity between joint tortfeasors. There is an exception to this rule where two parties are negligent but one of them is in control of the situation, its negligence is the direct immediate cause of the injury and the other party does not know of the fault that produced the harm, could not have anticipated it and in fact could rely on the other party not to have acted negligently. In such a situation it has been held that: "Indemnity shifts the impact of liability from passive tortfeasors to active ones", Kyrtatas v. Stop Shop, Inc.,205 Conn. 694, 697-98 (1988). Here, Dollar is not a tortfeasor at all so how could it be a joint tortfeasor. Dollar is the only subject to liability as lessor of the car under Section 14-154 (a).
However, giving the pleadings and claims of the plaintiff Dollar their most favorable construction, it could be argued by way of analogy to the scenario in Farm Bureau Mutual AutomobileIns. Co. v. Kohn Bros. Tobacco Co., 141 Conn. 539 (1954) that here, "the situation does not differ from one wherein an owner of a car is held liable in damages merely because of his (sic) ownership. In such a case, (the owner) can recover from the driver whose negligence caused the injury." Chernoff v. WholesomeBakery Products, Inc. 17 N.Y.S. 5d 570, id. page 544. This might be seen as a variation of a common law indemnification claim by Dollar. In other words the argument would run as follows: Dollar is liable here only because of its status as owner of the vehicle Quezada was driving when she caused the injury. Quezada was an employee of GOC, but GOC itself was an agent of SOI so SOI would be liable to Dollar for the actions of its subagent Quezada under the reasoning of Chernoff and Farm Bureau.
Application of this doctrine depends on a finding that GOC was an agent of SOI. The defendant SOI has attempted to make out a prima facie case for the proposition that GOC was not an agent of SOI by providing to the court a copy of the agreement between GOC and SOI. Counsel for SOI by affidavit represents this is the operative agreement governing, at least on a written basis, the legal relationship between these two entities and Dollar has not contested the authenticity of the document. Section 2.01 indicates that under the contract between these two entities, GOC and SOI, the games were to be financed, organized and conducted by GOC. SOI was to provide some support for the games and had some obligation to raise funds — certain in-kind support was to be given GOC and the proceeds of certain marketing ventures were to be split between the entities. The parties regarded themselves as separate entities. SOI was the "host" of the games and CT Page 2858 contracted with GOC to run them. Section 2.02 states "GOC's relationship to SOI shall be that of an independent contractor. GOC shall not act as or be construed as SOI's agent or partner and shall not hold itself out to any third party as SOI's agent. Except as specifically authorized by this agreement, GOC shall not purport to bind or undertake to bind SOI legally or financially in any way without SOI's express prior written consent". Section 2.03 requires GOC to file for its own tax exempt status under the Internal Revenue Code.
But there is another section § 6.02, which states "The games shall be planned, organized and financed in full compliance with the Games Standards." The section goes on to reference the various documents which establish these Games Standards. SOI is to keep GOC advised of all changes in these standards and "shall give GOC reasonable advance written notice of any changes or additions which will require implementation or compliance byGOC," (emphasis added). Underlying the control to be exercised by SOI is § 6.03 which sets forth how costs are to be borne which are incurred "as a direct result of complying with any changes or additions made by SOI to the Games Standards." GOC shall bear the costs of complying with reasonable "changes or additions imposed by SOI" because of health or safety requirements or those "imposed by SOI's chairman on an emergency basis" and SOI is responsible for costs of complying with other changes or additions to the games standards "if SOI requires GOCto comply with such other changes", (emphasis added).
In Menzie v. Windham Community Memorial Hospital,774 F. Sup. 91, 94 (D.Conn, 1991) the court says:
"Under Connecticut law, `agency' is defined as `the fiduciary relationship which results from manifestation of consent by one person to another that the other shall act on (that person's) behalf and subject (the person's) control and consent by the other so to act,' Beckenstein, 191 Conn. At 132, 464 A.2d 6, quoting Restatement (Second) agency § 1. By contrast an `independent contractor' is `one who, exercising an independent employment contract to do a piece of work according to his (sic) own methods and without subject to the control of his (sic) employer except as to the result of his (sic) work', Panaro v. Electrolux Corp. , 208 Conn. 589, 604 . . . quoting Alexander, 86 Conn. At 297. . . . Thus, the determination as to whether one CT Page 2859 is an employee or an independent contractor `depends on the existence or nonexistence of the right to control the means and method of work', Beaverdale Memorial Park, Inc. v. Danaher, 127 Conn. 175, 179 . . . (1940".
Also see Welz v. Manzillo, 113 Conn. 674, 679 (1931), Restatement (Second) Agency § 1, esp. comment (a) and § 2, esp. comment (b).
Without having access to the Games Standards which would inform the court as to the type and extent of control exercised by SOI, through the Games Standards and its ability to change them at its own discretion, the court cannot decide the question of whether an agency relationship between SOI and GOC was created by the agreement. Do these standards regulate in detail how GOC is to perform the agreement or only provide general goals? Does the language in § 2.01 that the games shall be "financed, organized and conducted by GOC" imply a more detailed control of day-to-day operations through use of the word "conducted" than the language of § 6.02 which provides that the games standards, dictated by and subject to at whim change by SOI, shall determine how the games shall be "planned, organized and financed? How can the court now decide these matters without access to the Games Standards? Also what effect on all this, if any, does Section 7.01-1 have which states generally that "GOC shall be responsible for arranging for the provision of all services and personnel equipment and supplies in safe and good working order . . ."
True, as noted, a section of the agreement explicitly said that an agency relationship was not being created and SOI and GOC had created an independent contractor relationship (See § 2.02). But ordinary rules of contract interpretation apply to agreements purportedly setting up agency and independent contractor relationships — Restatement (Second) Agency § 32. The court has an obligation to look at the wording of the entire contract and the fact that the parties have used certain words to define what they believe is a particular legal relationship does not mean that that legal relationship is created as opposed to others, id § 1 (comment (b) page 8.
In any event, the court cannot decide this aspect of the defendant's motion on the basis of this record and in effect denies that aspect of the motion which asks for dismissal of the common law indemnification count. On the bases of the foregoing CT Page 2860 discussion the court also will not grant the plaintiff Dollar's motion for summary judgment in its favor.
However, the court has reached its decision by discussing sections of the SOI-GOC agreement that were not raised by brief or oral argument. Therefore, the court will permit reargument on its decision and will also allow both sides to submit further briefs, oral argument, affidavits and other documentation if either or both sides desire. The court felt obligated to state its position in full so as to give guidance to both sides as to how to proceed further.
 3.
The foregoing discussion does not preclude the court from granting the defendant SOI's motion on the claim of statutory indemnification. In other words, even if somehow GOC were held to be the agent of SOI, thus making Quezada a type of subagent of SOI, the question remains whether under the indemnification clause of the Dollar-SOI agreement SOI would have any obligation to Dollar. That clause makes SOI responsible to reimburse Dollar for any harm caused to Dollar by any negligence of an SOI agent but only for harm caused by the agent "in performing or failing to perform any service, obligation or duty pursuant to this Agreement" (i.e. the agreement between Dollar and SOI). Under this agreement, what were the service obligations or duties SOI obligated itself to perform for Dollar? The answer to this question will define whether any purported agent was performing an activity "pursuant to this agreement". Dollar was to be recognized as a sponsor of the games, with use of a special designation reflecting this status to be permitted, Dollar could use SOI logos and trademarks, Dollar was to receive complimentary invitations and VIP reception opportunities and tickets, see generally Sections 4 and 6 of agreements. Also certain advertising rights and opportunities were given and SOI was to give support in the planning and implementation of sponsorship programs with respect to promotion, public relations, international development and individual sports. (See § 4f) In return for these valuable promotional opportunities, Dollar was to make cash and in-kind contributions to SOI. Promoting Dollar as a sponsor and facilitating Dollar's use of certain advertising opportunities defined SOI's service obligations and duties.
Even assuming Quezada was somehow an agent of SOI that would CT Page 2861 not make SOI liable under the terms of the indemnification agreement to Dollar; the language of the indemnification agreement must be examined to determine that issue, Peck v.McClug, 16 Conn. App. 651, 658 (1988). Assuming further that somehow under the circumstances in which she did so, Ms. Quezada was acting within the scope of her job with GOC in driving her car home — how is that a "service" under the sponsorship agreement? As the defendant notes, in driving home Quezada was using the car for her benefit and perhaps this would have had some undefined ancillary benefit for GOC. But how could this action on her part be said to promote Dollar as a sponsor of the games or help Dollar in using various advertising opportunities under the contract? Except for the last four words of paragraph 4 (f) of the agreement which at least to the court are indecipherable, the "promotion" aspects of the Dollar-SOI agreement reflected in paragraphs 4 and 5 concerned allowing Dollar to obtain full recognition and advertisement of its sponsorship status on a national and international level. The promotion of various aspects of the games or conduct of the games was not what the agreement concerned itself with at least insofar as it defined SOI's obligations under the agreement.[1]
The court will grant the defendant's motion as it relates to a claim of contractual indemnification and thus denies the plaintiff's motion based on this theory.
Corradino, J.