ROBERT BERUBE ET AL. *v.* LOUIS NAGLE ET AL.
(AC 23201)

Foti, Schaller and Berdon, Js.

Argued September 22, 2003—officially released March 2, 2004

*William E. McCoy*, for the appellants-cross appellees (named defendant et al.).

*Richard S. Cody*, for the appellees-cross appellants (plaintiffs).

*Opinion*

BERDON, J. The defendants, Louis Nagle, Sandra Nagle and Donald Bessette, Sr., appeal, and the plaintiffs, Robert Berube and Debra Berube, cross appeal from the judgment of the trial court.[1] Bessette on the appeal and the plaintiffs on their cross appeal claim that the court improperly found a right-of-way providing access to Pachaug Pond in Griswold in favor of Greg

---

[1] Greg LaLummier also was a defendant in the underlying proceedings. On April 9, 2003, we granted the motion of LaLummier's counsel for permission to withdraw his appearance. On the same date, we also ordered, sua sponte, that the cross appeal would be considered on the basis of the briefs filed by the plaintiffs, the Nagles and Bessette, the record, and oral argument by the plaintiffs, the Nagles and Bessette, unless LaLummier filed an appearance and a brief on or before April 24, 2003. LaLummier did not file an appearance or brief. Accordingly, we consider this appeal and cross appeal only on the record, the oral arguments presented and the briefs that were filed.

LaLummier. Bessette also claims that the court improperly awarded damages based on the diminution in value of the plaintiffs' property at the time of trial rather than at the time of his breach of warranty. The Nagles claim that the court improperly found an easement for parking in favor of the plaintiffs on their property. In their cross appeal, the plaintiffs further claim that the court improperly denied relief on their claims of nuisance, malicious erection of a structure and infliction of emotional distress, and denied their prayers for punitive or exemplary damages. We agree with Bessette's claim that the court improperly awarded damages based on the diminution in value of the plaintiffs' property at the time of trial and the Nagles' claim that the court improperly found an easement for parking in favor of the plaintiffs. We disagree with Bessette's and the plaintiffs' claim that the court improperly found a right-of-way providing access to Pachaug Pond in favor of LaLummier. We also disagree with the plaintiffs' claims of nuisance, malicious erection of a structure and infliction of emotional distress that were raised in their cross appeal.

The following facts are not in dispute. Bessette was the owner of four parcels of property located in Griswold: 79 Osga Lane, 83 Osga Lane, 92 Osga Lane and lot 19.

In 1983, Bessette conveyed 92 Osga Lane to Harold Earls and Leilani Earls. Included in the conveyance was "a Right of Way to Pachaug Pond, 15 feet in width located along the northerly line of other land of the grantor and known as lot no. 6 on plan of Mary Osga, dated June, 1946."[2] Subsequently, on January 29, 1994, the Earls conveyed their interest in 92 Osga Lane, together with the right-of-way to Pachaug Pond, to LaLummier.

The only means of obtaining access to Osga Lane, which is a right-of-way to Bethel Road, for 79 Osga Lane and 83 Osga Lane is over lot 19. In 1987, Bessette conveyed, by warranty deed, 83 Osga Lane to the plaintiffs in fee simple. The deed to the plaintiffs included "the right to use the right of way [over lot 19] leading to Bethel Road for all purposes of ingress and egress." The warranty deed from Bessette to the plaintiffs did not except the right-of-way to Pachaug Pond to LaLummier.

In 2000, Bessette conveyed 79 Osga Lane and lot 19 to the Nagles. Upon taking possession, the Nagles began parking their vehicles on lot 19, which the plaintiffs claimed interfered with their right-of-way to Osga Lane and inhibited their ability to park their vehicles there, as they had previously. Shortly after purchasing the property, the Nagles constructed a kennel on their property near the property line of the plaintiffs.

The plaintiffs subsequently brought the present action to quiet title and to settle other related disputes. Following a trial, the court held that (1) the plaintiffs had an easement across lot 19 "for all purposes, including ingress, egress, parking and any other appropriate use," (2) LaLummier had a right-of-way to Pachaug Pond over the plaintiffs' property, (3) Bessette had

---

[2] The properties that are now 79 Osga Lane and 83 Osga Lane were subdivided by Bessette from one parcel that was known as lot 6.

breached the covenants in the plaintiffs' warranty deed as a result of the right-of-way to Pachaug Pond in favor of LaLummier, resulting in $15,000 in damages, and (4) the plaintiffs failed to sustain their burden of proof on their claims of nuisance, malicious erection of a structure and intentional infliction of emotional distress.

## I

Both Bessette and the plaintiffs claim that the court improperly found a right-of-way to Pachaug Pond over the plaintiffs' property in favor of LaLummier. We disagree.

The court found the following additional facts that are relevant to our resolution of this claim. In 1983, Bessette conveyed 92 Osga Lane to the Earls, including the right-of-way to Pachaug Pond over 83 Osga Lane. Subsequently, in 1987, Bessette conveyed 83 Osga Lane to the plaintiffs in fee simple, without excepting the right-of-way that he had conveyed to the Earls.

In 1993, LaLummier was in the Pachaug Pond area, looking for a house to rent or purchase that was on the water. While he was passing the plaintiffs' property, he asked Debra Berube whether she knew of any properties that were available. Debra Berube told LaLummier that the Earls were planning on either renting or selling their property and that the property had a right-of-way to Pachaug Pond over her property. Subsequently, LaLummier entered into a rental agreement with the Earls and in 1994, the Earls sold 92 Osga Lane to him. Included in the conveyance was the right-of-way to Pachaug Pond. Since the time LaLummier began renting the property, he utilized the right-of-way to Pachaug Pond without interference from the plaintiffs.

## A

Bessette claims that the court improperly found that he breached the warranty deed he gave to the plaintiffs

because the plaintiffs had knowledge of the right-of-way to Pachaug Pond. We disagree.

"With regard to the trial court's factual findings, the clearly erroneous standard of review is appropriate. . . . A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . Simply put, we give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Internal quotation marks omitted.) *Miller* v. *Guimaraes*, 78 Conn. App. 760, 766–67, 829 A.2d 422 (2003).

In its memorandum of decision, the court found that the plaintiffs knew of the easement over their property in favor of 92 Osga Lane. It has long been held that knowledge of the encumbrance by the grantee at the time of purchase is immaterial. See *Hubbard* v. *Norton*, 10 Conn. 422, 431–32 (1835). "[T]he fact that the grantee knew of an outstanding superior claim at the time of the conveyance does not bar his right to recover for breach of a covenant of warranty . . . ." 20 Am. Jur. 2d 536, Covenants § 108 (1995); see also *Adams* v. *Belote*, 263 Ga. App. 640, 642, 588 S.E.2d 827 (2003); *Hughes* v. *Young*, 115 N.C. App. 325, 330, 444 S.E.2d 248, review denied, 337 N.C. 692, 448 S.E.2d 525 (1994); *Leach* v. *Gunnarson*, 290 Or. 31, 36, 619 P.2d 263 (1980). Accordingly, Bessette's claim that the court improperly found that he breached the warranty deed because the plaintiffs had prior knowledge of the right-of-way is unavailing.

B

The plaintiffs claim that the court improperly held that they were barred by the doctrine of equitable estoppel from claiming that LaLummier did not have a right-

of-way over their property to Pachaug Pond. Specifically, the plaintiffs claim that the court improperly invoked the doctrine of equitable estoppel when there was no evidence presented to the court that they had told LaLummier that a right-of-way to the pond existed over their property or that LaLummier ever had relied to his detriment on any statements made by them. We disagree.

The court found that the plaintiffs were barred by the doctrine of equitable estoppel from claiming that LaLummier had no interest in the pond easement. The court found that the plaintiffs knew of the easement and had assured LaLummier that he had a right to cross their property.

"The party claiming estoppel . . . has the burden of proof. . . . Whether that burden has been met is a question of fact that will not be overturned unless it is clearly erroneous. . . . A court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . The legal conclusions of the trial court will stand, however, only if they are legally and logically correct and are consistent with the facts of the case. . . . Accordingly, we will reverse the trial court's legal conclusions regarding estoppel only if they involve an erroneous application of the law. . . .

"[I]n Connecticut, the doctrine of equitable estoppel . . . requires proof of two essential elements: [First] the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and [second] the other party must change [its] position in reliance on those facts, thereby incurring some injury." (Internal quotation marks omitted.)

*Celentano* v. *Oaks Condominium Assn.*, 265 Conn. 579, 614–15, 830 A.2d 164 (2003).

The plaintiffs incorrectly state that there was no evidence introduced to support the finding that they were equitably estopped from denying that LaLummier had the right-of-way. The record before us more than adequately supports the court's findings. LaLummier testified that in 1993, prior to his renting 92 Osga Lane, Debra Berube told him that the property "had a right-of-way to the lake along her property." LaLummier also testified that the plaintiffs commonly referred to the right-of-way as belonging to him. Furthermore, LaLummier testified that he had a conversation with the plaintiffs in 1997 in which the plaintiffs indicated that they would be willing to purchase the right-of-way from him if he wanted to sell it. Clearly, there was sufficient evidence before the court for it to have found that the plaintiffs had told LaLummier that he had a right-of-way over their property to the pond.

LaLummier relied on the plaintiffs' actions to his detriment. LaLummier specifically testified that he would not have rented or purchased the property if the right-of-way to the pond did not exist. The court, therefore, properly found that the plaintiffs were equitably estopped from claiming that LaLummier did not have a right-of-way to Pachaug Pond.

II

Bessette next claims that the court improperly awarded the plaintiffs damages for the breach of the warranty deed based on the diminution in value of the plaintiffs' property at the time of trial. Bessette claims that the amount of damages should have been measured as of the date of the alleged breach of warranty. Specifically, Bessette claims that because there was no evidence introduced as to the amount of damages at the

time of the breach, the court improperly awarded damages to the plaintiffs in the amount of $15,000. We agree.

"When the factual basis of the trial court's decision is challenged on appeal, the role of this court is to determine whether the facts set out in . . . the decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . On appeal, the function of this court is limited solely to the determination of whether the decision of the trial court is clearly erroneous." (Internal quotation marks omitted.) *Wren* v. *MacPherson Interiors, Inc.*, 69 Conn. App. 349, 353–54, 794 A.2d 1043 (2002). At trial, the only witness to testify in regard to the damages that resulted from Bessette's breach of the warranty deed to the plaintiffs was James Blair, a licensed appraiser. Blair appraised the property to determine its value as if it were not encumbered by the right-of-way and then appraised the property as encumbered by the right-of-way as of the time of trial, January, 2001. He concluded that as a result of the property being encumbered by the right-of-way, its value had decreased by $15,000. Blair testified that his opinion of the value of the plaintiffs' property and the decrease in the property as a result of the encumbrance was based on market data when he conducted his appraisal. He did not have an opinion of the diminution in value of 83 Osga Lane when the plaintiffs purchased it.

In *Levesque* v. *D & M Builders, Inc.*, 170 Conn. 177, 365 A.2d 1216 (1976), our Supreme Court, in determining when damages are to be measured once a breach of a warranty deed has been established, stated that "the damages *must be measured as of the date of the breach.*" (Emphasis added.) Id., 183. In this case, the court's measure of damages was based on the property value fourteen years after the breach of the warranty deed in 1987. We agree with the defendants' claim that

the court improperly awarded damages based on the diminution in value of the plaintiffs' property measured at the time of the trial in 2001. Accordingly, the court's award of damages was clearly erroneous because there was no evidence as to the damages that the plaintiffs sustained at the time of the breach. Because the record is devoid of evidence of the diminution in value of the property at the time of the breach, the court must rehear this matter solely on the issue of the assessment of damages. See *Peck* v. *McClurg*, 16 Conn. App. 651, 657, 548 A.2d 17 (1988).

### III

The Nagles claim that the court improperly found an easement by prescription for parking in favor of the plaintiffs on their property. We agree.

Included in the conveyance from Bessette to the plaintiffs in 1987 was a "right to use the right of way leading to Bethel Road for all purposes of ingress and egress." The right-of-way crossed over lot 19 and connected the plaintiffs' property to Bethel Road, a public road. It was the plaintiffs' contention at trial that the right-of-way included the right to park their vehicles on lot 19. The court agreed with the plaintiffs, finding that they had "an easement across lot 19 for all purposes, including ingress, egress, parking and any other appropriate use" by prescription.

"We begin our analysis of the issue by setting forth the requirements for establishing a prescriptive easement. General Statutes § 47-37 concerns the acquisition of easements by adverse use or prescription. Section 47-37 provides: No person may acquire a right-of-way or any other easement from, in, upon or over the land of another, by the adverse use or enjoyment thereof, unless the use has been continued uninterrupted for fifteen years. In applying that section, this court repeatedly has explained that [a] party claiming to have

acquired an easement by prescription must demonstrate that the use [of the property] has been open, visible, continuous and uninterrupted for fifteen years and made under a claim of right. . . .

"Whether a right of way by prescription has been acquired presents primarily a question of fact for the trier after the nature and character of the use and the surrounding circumstances have been considered. . . . When the factual basis of the court's decision is challenged, the reviewing court must determine whether the facts are supported by the evidence or whether they are clearly erroneous. . . . In such cases, the trier's determination of fact will be disturbed only in the clearest of circumstances, where its conclusion could not reasonably be reached." (Citation omitted; internal quotation marks omitted.) *McManus* v. *Roggi*, 78 Conn. App. 288, 294, 826 A.2d 1275 (2003).

"There can be no claim of right unless the use is unaccompanied by any recognition of [the] right [of the owner of the servient tenement] to stop such use. [Thus, a] use by express or implied permission or license *cannot* ripen into an easement by prescription. . . . Connecticut law refrains from extinguishing or impairing property rights by prescription unless the party claiming to have acquired an easement by prescription has met each of these stringent conditions." (Citation omitted; emphasis added; internal quotation marks omitted.) *Lisiewski* v. *Seidel*, 72 Conn. App. 861, 873, 806 A.2d 1121, cert. denied, 262 Conn. 921, 922, 812 A.2d 865 (2002).

The uncontroverted testimony at the trial, however, indicated that prior to the Nagles' purchasing 79 Osga Lane and lot 19, Bessette permitted the plaintiffs to park their vehicles on lot 19. Bessette testified that he had agreed to let the plaintiffs use lot 19 to park their vehicles until he sold 79 Osga Lane and lot 19. As the

court stated during the testimony of Bessette, "[a]pparently [the plaintiffs] parked there *with his permission* before he sold it to [the Nagles]." (Emphasis added.) Furthermore, Robert Berube, on cross-examination, admitted that it had been implied to him that he could park his vehicles on lot 19.[3] Accordingly, because the plaintiffs admitted that they had permission to park their vehicles on lot 19 from the time they purchased 83 Osga Lane in 1987 until the time the Nagles purchased 79 Osga Lane and lot 19 in 2000, the plaintiffs did not adversely use lot 19 for the statutory requisite of fifteen years to establish an easement by prescription. See *Sachs* v. *Toquet*, 121 Conn. 60, 66, 183 A. 22 (1936). We conclude, therefore, that the court improperly found a prescriptive easement in favor of the plaintiffs.

## IV

On cross appeal, the plaintiffs claim that the court improperly found that they did not meet their burden of proof on their claims of nuisance, malicious erection of a structure and intentional infliction of emotional distress. We disagree.

---

[3] The following colloquy took place between Robert Berube and the defendants' counsel:

"[The Defendants' Counsel]: And so, you knew you did not own the triangular parcel of land [lot 19] that sits to the west of your property, isn't that true?

"[The Witness]: No, sir.

"[The Defendants' Counsel]: Well, how do you reconcile the deed description of 50 by 150 with that triangular parcel?

"[The Witness]: Sir, it was in the course of walking the lot and observing it, and where the parking was. *It was implied to us that it was ours.* I believed it was ours.

"[The Defendants' Counsel]: Implied to you by whom?

"[The Witness]: By Mr. Bessette.

"[The Defendants' Counsel]: It is your claim that Mr. Bessette told you that you owned the triangular parcel?

"[The Witness]: No, sir. That's not what he said.

"[The Defendants' Counsel]: Well, what exactly did Mr. Bessette say?

"[The Witness]: When we walked the land, the property was described as a whole block, running from Osga Lane to the pond." (Emphasis added.)

The court's memorandum of decision reveals the following facts that are relevant to our resolution of the plaintiffs' claim. Shortly after the Nagles purchased their property, they temporarily erected a chain-link dog kennel on 79 Osga Lane for their four dogs. The kennel was ten feet by ten feet in size and was erected approximately seven and one-half feet from the plaintiffs' house. The plaintiffs claimed that the dogs barked constantly. The structure was in that location for six to eight weeks when it was then moved to another location on the Nagles' property.

At trial, the plaintiffs claimed that the Nagles had erected the kennel near their house deliberately to torment them. Louis Nagle testified that he had placed the kennel near the plaintiffs' property line because that was the flattest area on his property. Sandra Nagle had recently had shoulder surgery, and another location would have been difficult for her to access. Louis Nagle further testified that as soon as his wife recuperated, he moved the kennel away from the plaintiffs' property line to another location. The court found that the plaintiffs had failed to prove their case with respect to their claims of nuisance, malicious erection of a structure and intentional infliction of emotional distress. We agree.

## A

The plaintiffs first claim that the court improperly found that they had failed to establish that the Nagles' placing the dog kennel near their property line amounted to a nuisance. We disagree.

"A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land. . . . The law of private nuisance springs from the general principle that [i]t is the duty of every person to make a reasonable use of his own property so as to occasion no unnecessary damage or annoyance to his

neighbor. . . . The essence of a private nuisance is an interference with the use and enjoyment of land." (Citations omitted; internal quotation marks omitted.) *Pestey* v. *Cushman*, 259 Conn. 345, 352, 788 A.2d 496 (2002).

In *Pestey*, the court formulated the following standard for a private nuisance: "[A] plaintiff must show that the defendant's conduct was the proximate cause of an unreasonable interference with the plaintiff's use and enjoyment of his or her property. The interference may be either intentional . . . (nuisance is created intentionally if defendant intends act that brings about condition found to be nuisance); or the result of the defendant's negligence. . . . Whether the interference is unreasonable depends upon a balancing of the interests involved under the circumstances of each individual case. In balancing the interests, the fact finder must take into consideration all relevant factors, including the nature of both the interfering use and the use and enjoyment invaded, the nature, extent and duration of the interference, the suitability for the locality of both the interfering conduct and the particular use and enjoyment invaded, whether the defendant is taking all feasible precautions to avoid any unnecessary interference with the plaintiff's use and enjoyment of his or her property, and any other factors that the fact finder deems relevant to the question of whether the interference is unreasonable. No one factor should dominate this balancing of interests; all relevant factors must be considered in determining whether the interference is unreasonable.

"The determination of whether the interference is unreasonable should be made in light of the fact that some level of interference is inherent in modern society. There are few, if any, places remaining where an individual may rest assured that he will be able to use and enjoy

his property free from all interference. Accordingly, the interference must be substantial to be unreasonable. . . .

"Ultimately, the question of reasonableness is whether the interference is beyond that which the plaintiff should bear, under all of the circumstances of the particular case, without being compensated." (Citations omitted; internal quotation marks omitted.) Id., 361–62. Whether an interference is reasonable or unreasonable is a question of fact to be decided by the trier of fact. *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 580, 657 A.2d 212 (1995). The trier of fact's determination of a question of fact will not be overturned unless it is clearly erroneous. See *Bongiorno Supermarket, Inc.* v. *Zoning Board of Appeals*, 266 Conn. 531, 538–39, 833 A.2d 883 (2003).

There was conflicting evidence as to why the Nagles chose that location for the kennel. "Where there is conflicting evidence . . . we do not retry the facts or pass upon the credibility of the witnesses. . . . The probative force of conflicting evidence is for the trier to determine. . . . In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony and, therefore, is free to accept or reject, in whole or in part, the testimony offered by either party." (Internal quotation marks omitted.) *DiVito* v. *DiVito*, 77 Conn. App. 124, 138, 822 A.2d 294, cert. denied, 264 Conn. 921, 828 A.2d 617 (2003).

Accordingly, we cannot say that the court improperly found that the plaintiffs had failed to meet their burden of proof to establish that the Nagles' temporary placement of the dog kennel near the plaintiffs' property line was a nuisance.

B

The plaintiffs next argue that the court improperly found that they had failed to meet their burden of proof

as to their claim for malicious erection of a structure in violation of General Statutes § 52-570. We disagree.

Section 52-570 provides: "An action may be maintained by the proprietor of any land against the owner or lessee of land adjacent, who maliciously erects any structure thereon, with intent to annoy or injure the plaintiff in his use or disposition of his land." It is the plaintiffs' contention that the Nagles violated § 52-570 by erecting the dog kennel near their property line. As stated previously, there was conflicting testimony about the reasons behind the Nagles' decision to temporarily erect the dog kennel near the plaintiffs' property line. It was within the court's discretion which testimony to credit.

Accordingly, because there was evidence that the Nagles did not intend to annoy or to injure the plaintiffs when the Nagles placed the kennel near the property line, the court's decision that the plaintiffs had failed to establish that the Nagles maliciously erected the dog kennel was not improper.

C

The plaintiffs next claim that the court improperly concluded that they had failed to meet their burden of proof on their claim of intentional infliction of emotional distress. We disagree.

"As an initial matter, we set forth the standard of review and legal principles that guide our resolution of that issue. In determining whether a plaintiff may maintain an action for intentional infliction of emotional distress, the plaintiff must establish four elements. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause

of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. . . . Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. . . . Only where reasonable minds disagree does it become an issue for the jury. . . . Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society. . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous! . . . Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." (Internal quotation marks omitted.) *Heim* v. *California Federal Bank*, 78 Conn. App. 351, 364–65, 828 A.2d 129, cert. denied, 266 Conn. 911, 832 A.2d 70 (2003).

We cannot say that the Nagles' temporarily erecting the dog kennel near the plaintiffs' property line was conduct that was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (Internal quotation marks omitted.) Id., 365. Accordingly, the court did not improperly find that the plaintiffs had failed to prove their case with respect to their claim of intentional infliction of emotional distress.[4]

---

[4] Because we conclude that the court properly found that the plaintiffs did not meet their burden of proof on their claims of nuisance, malicious erection of a structure and intentional infliction of emotional distress, we need not address the plaintiffs' claim that the court improperly failed to award them punitive or exemplary damages on the basis of such claims.

The judgment is reversed only as to the award of $15,000 in damages to the plaintiffs and the finding of a parking easement in favor of the plaintiffs and the case is remanded for a hearing in damages with respect to any diminution in value of the plaintiffs' land as a result of the right-of-way across their property to Pachaug Pond. The judgment is affirmed in all other respects.

In this opinion FOTI, J., concurred.

SCHALLER, J., dissenting in part. Although I agree with the majority's resolution of claims I, II and IV, I do not agree to reverse the trial court's determination that the plaintiffs, Robert Berube and Debra Berube, established their right to a prescriptive parking easement. The court concluded that the plaintiffs had "an easement across lot 19 [which is owned by the defendants Louis Nagle and Sandra Nagle] for all purposes, including ingress, egress, *parking* and any other appropriate use." (Emphasis added.) Although the court made minimal findings pertaining to that issue, the defendant Donald Bessette, Sr., and the Nagles failed to file a motion for articulation of the court's decision.

On appeal, the defendants raise two vague challenges to that conclusion. They first claim that the court improperly provided for a parking easement because it was "in the nature of an ownership of property rather than an easement." They complain that the court so concluded "without explanation." They next claim that the parking easement was found "without any legal foundation or authority for the same." In presenting those claims, the defendants raise essentially factual questions. Their briefing of the two claims fails to shed light on the underlying issues.

The majority, nonetheless, reverses the court's conclusion on the ground that certain "uncontroverted tes-

timony at the trial" indicated that Bessette had given the plaintiffs permission to park on lot 19. The majority also relies on an offhand comment made by the court "during the testimony of Bessette" to the effect that the plaintiffs had permission to park on the lot.

As to the first ground, the "uncontroverted testimony" consists of the following testimony by Robert Berube:

"[The Defendants' Counsel]: Well, how do you reconcile the deed description of 50 by 150 with the triangular parcel?

"[The Witness]: Sir, it was in the course of walking the lot and observing it, and where the parking was. *It was implied to us that it was ours. I believed it was ours.*

"[The Defendants' Counsel]: Implied to you by whom?

"[The Witness]: By Mr. Bessette.

"[The Defendants' Counsel]: It is your claim that Mr. Bessette told you that you owned the triangular parcel?

"[The Witness]: No, sir. That's not what he said.

"[The Defendants' Counsel]: Well, what exactly did Mr. Bessette say?

"[The Witness]: When we walked the land, the property was described as a whole block, running from Osga Lane to the pond." (Emphasis added.)

That series of questions and answers hardly constitutes clear and unambiguous testimony that Bessette gave *permission* to use the property for parking purposes. To the contrary, it suggests that the Berubes had a *right* to park on the lot. As to the court's casual remark during the trial testimony concerning permission, an incidental comment by the court made in the course of trial testimony does not, under any circumstances,

constitute a *finding*. Even if it did, the court may always revaluate an earlier finding and change its mind. See generally *Whiteside* v. *State*, 148 Conn. 77, 82, 167 A.2d 450 (1961).

Whether a trier of fact *could* find that the evidence established a permissive use is beside the point. The court in this case, in concluding that the plaintiffs had established their claim of a prescriptive easement, unmistakably *rejected* any evidence tending to establish *permissive* use. It would not otherwise have concluded that the plaintiffs' use was *prescriptive*. It is not appropriate for us, in discharging our appellate role, to reverse the court's decision on the basis of an interpretation of the evidence that the court clearly rejected. Doing so would place this court in the position of making its own findings and, in effect, *second-guessing* the trial court as to the evidence. See *State* v. *Porter*, 76 Conn. App. 477, 502, 819 A.2d 909, cert. denied, 264 Conn. 910, 826 A.2d 181 (2003). I believe that we have no choice, under the circumstances, but to affirm the judgment of the trial court on that issue.

For the foregoing reasons, I respectfully dissent.