ANN CHESKUS, ADMINISTRATRIX (ESTATE OF ADELINE CHESKUS) *vs.* PETER CHRISTIANO ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, JS.

Argued November 8th—decided December 3d, 1935.

*John C. Blackall,* with whom, on the brief, was *Charles H. Blackall,* for the appellants (defendants).

*Algert F. Politos*, with whom, on the brief, was *Harry Ginsberg*, for the appellee (plaintiff).

HAINES, J.  The trial court found that Christiano was the driver, servant and agent of the Holman Company and as such was driving his truck behind another truck north from New Haven toward Wallingford on the Boston Post Road on the night of December 11th, 1933.  At about 10.45 p. m., as the trucks approached the Old Colony Lodge on the east side of the road, the leading truck pulled off the roadway to its right in front of the Lodge, to renew the supply of gas from an emergency can it carried.  The highway at this point was of black asphalt, the traveled portion of which was eighteen feet wide, with an east shoulder of five feet and a west shoulder of six feet.  The Holman truck, which was eight feet wide, was brought to a stop by its driver before coming alongside the other one, with its left wheels six feet from the east edge of the traveled road and its right wheels two feet on the east shoulder of the road.  A short time after the Holman truck stopped in this position, the defendant Matasavage approached from the south driving a new Nash car owned by the Waterbury Nash Company. He was accompanied by the decedent as a guest, a young woman twenty-four years of age, and was driving thirty-five to forty miles per hour.  When within forty feet of the rear of the Holman truck he observed it in front of him and tried to avoid striking it by putting on his brakes and turning his car to the left, but failed and struck the left rear end of the truck, and the decedent was killed as a result of the impact.

The roadway south of the point where the Holman truck stood was straight and level for two hundred to three hundred feet and there was no other traffic near the scene at the time.  There were no street lights, but

there were a number of colored lights on the Lodge building fifty feet east of the highway and a lighted neon sign was set on a post in front of the Lodge and nineteen feet from the east edge of the traveled roadway. None of these artificial lights, however, illuminated to any extent the area where the Holman truck stood. The night was windy, clear and cold, and the traveled portion of the roadway was clear and dry with a thin layer of snow on the shoulders.

The Holman truck was of the van type with a tailboard two feet high and this had been lowered and was held flush with the floor of the van by chains suspended from the sides of the body. The van contained a load of furniture a part of which—a bed spring standing upright—extended out at the rear over and beyond the tailboard for four inches. Over the rear of the truck and its load from the top to the tailboard and from side to side was a canvas or tarpaulin tied at the top but taut around the tailboard. The appellants contend that the evidence does not support the finding that this bed spring extended four inches beyond the rear end of the tailboard, but while there was some conflict in the testimony upon this point, there is evidence which sufficiently supports the court's finding. There is a detailed finding as to the various provisions for lights on the rear of the Holman truck, but it is further found that none of these were lit while the truck stood at the point of collision and the reflectors did not serve as warnings, because they were covered with the tarpaulin. This finding is also attacked, but a reading of the evidence of record shows that the question was a disputed one. There is evidence to support the finding.

The load on this truck extended two feet four inches beyond the rear edge of the stationary floor of the body of the truck and was without a red light as re-

quired by General Statutes, Cum. Sup. 1933, § 457b, now Cum. Sup. 1935, § 642c. The relevant portion of this statute reads: "No person shall . . . during the period of one-half hour after sunset to one-half hour before sunrise, operate upon any highway any vehicle carrying a load which shall extend beyond the stationary floor of the body of such vehicle, unless a red light shall be attached to the rear end of such load. . . ." The amendment of the complaint with reference to this statute, made at the suggestion of the court, was permissible, full opportunity to meet it having at the same time been extended to the defendants. Its effect was to make the pleadings conform to the proof and it did not in any way change the cause of action for negligence. There was an allegation that the truck was parked without giving any warning, and this statute requires the red light as a warning. Practice Book, § 96; General Statutes, § 5541; *Mazulis* v. *Zeldner*, 116 Conn. 314, 164 Atl. 713.

It is further required by statute that a motor vehicle standing on a public highway between one-half hour after sunset and one-half hour before sunrise shall show at least one red light in the rear save in a place and under conditions "where there is sufficient artificial light to make such motor vehicle clearly visible from a distance of not less than two hundred feet in every direction." General Statutes, § 1598(f). The appellants claim that since the court found that this truck, without lights, could be seen by one looking for it, for two hundred feet, it was not within the prohibition of this statute. The sole basis for the finding is the testimony of the driver of another car which was following the truck who of course had the benefit of the headlights on his own car. It does not by any means follow that the standing truck was "clearly visible from a distance of not less than two hundred

feet in every direction," as required by the statute. The parking of the Holman truck without lights and so as to occupy two-thirds of the lane in which north-bound cars would approach was a violation of this statute and negligence.

The present appellants contend that the negligence of Matasavage was the sole proximate cause of the accident and that the negligent parking of the Holman truck merely created a condition which, at the time of the collision had become a remote as distinguished from a proximate cause and was thus not a substantial factor in producing the injury. It is unnecessary to discuss this claim since the record contains no finding that Matasavage was negligent. On the other hand, the parking of the Holman truck in the manner indicated, invited the very result which followed. It was what was naturally to be expected and was a proximate cause of the accident which resulted in the plaintiff's injury.

There is no error.

In this opinion the other judges concurred.