### ELDON L. CROWELL *vs.* MIDDLETOWN SAVINGS BANK.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued December 3d, 1936—decided January 8th, 1937.

*Cyril Coleman,* for the appellant (defendant).

*Robert P. Butler,* with whom was *Paul Volpe,* for the appellee (plaintiff).

BANKS, J. This is an action to recover damages for personal injuries suffered by reason of a fall of the plaintiff into an elevator shaft in defendant's building.

Defendant appeals from the denial of its motion to set aside the verdict in favor of the plaintiff and for claimed errors upon the trial.

The defendant claims that upon the evidence the jury could not reasonably have found either that it was negligent or the plaintiff free from contributory negligence. The jury could reasonably have found the following facts: Plaintiff was a tenant of the defendant, having an office upon the fifth floor of its bank building. The entrance to the offices in the building is through a vestibule into a corridor about ten feet wide and thirty feet long which runs north and south. An elevator is located at the northerly end of the corridor in the west wall directly opposite glass doors opening into the banking room. There is a metal door in front of the elevator shaft which on opening slides into a wall recess. This may be opened by inserting a metal rod or key into a hole in the door thereby releasing a lever on the inside of the door so that the panels slide from left to right into the recess in the wall. This rod was customarily kept upon the top of a bronze mail box which immediately adjoined the elevator on the north. There are two ceiling lights in the corridor which are controlled by push buttons located on the east wall. There is a light inside the elevator car which is controlled by a switch located on the north wall of the car. The elevator is attended by an operator during business hours, and on Saturday evenings when the bank is open until 8 o'clock. The plaintiff, with the knowledge of officials of the bank, had, on a number of occasions, used the rod to open the doors of the elevator shaft, and had operated the elevator when the operator was not on duty. On those occasions the elevator had been left standing at the first floor level with the grill gate on the elevator car open.

On May 12th, 1934, at about 8:20 p. m., plaintiff entered defendant's building intending to go to his office. It was dusk but the corridor lights were not lit. He took the key to the door of the elevator shaft from the top of the mail box, inserted it in the hole in the door, opened the sliding metal door, stood with some portion of his body against the edge of the door to hold it open, replaced the key on the mail box with his right hand, and reached with his left hand into the open elevator shaft for the purpose of turning the light switch in the elevator which he supposed was at the floor level. The elevator was not there, the operator having taken it up to the fourth floor where he had gone to consult a doctor upon that floor. Plaintiff lost his balance and fell down the elevator shaft a distance of twenty feet.

The plaintiff claimed that the defendant was negligent in failing to keep the elevator shaft properly lighted in the night season, in leaving the elevator unguarded at night when the defendant knew or ought to have known that tenants who were permitted access to it by keys left at the first floor level for that purpose would be likely to use the same, and in failing to have a light switch so located as to make it possible for the plaintiff to have access to it before entering the elevator. In the absence of permission to the tenants of the building to use the elevator when the operator was not in attendance, there was no duty devolving upon the defendant to keep the elevator shaft lighted at night. The plaintiff's injuries resulted from his attempt to use the elevator as above stated. This he had done before in the absence of the operator and after business hours. On each such occasion the elevator had been at the first floor level with the grill door of the cage open. On this occasion, though it was after the hours during which the operator was in at-

tendance, and the lights in the corridor were out, the operator, instead of leaving the elevator at the floor level with the grill door open, had taken it up to the fourth floor. The jury, upon all the evidence, could reasonably have found that it was the custom of the elevator operator, at the close of business hours, to shut off the corridor lights, leave the elevator at the first floor level with the metal sliding doors closed and to leave on the top of the mail box the key which the plaintiff and other tenants, with the knowledge of the defendant, used to unlock the elevator doors when they wished to use the elevator after regular operating hours. They could reasonably find that, in view of that custom, a tenant coming into the building after 8 o'clock on Saturday night, and finding the corridor lights out and the key on top of the mail box, might reasonably expect to find the elevator car at the first floor landing, and that it was negligent for the operator under those circumstances to shut off the corridor lights and take the elevator to an upper floor of the building, when there was nothing to indicate that it was not in its usual place, and that this negligence was the proximate cause of the plaintiff's injuries.

The defendant claims that, upon the evidence, the plaintiff was guilty of contributory negligence as a matter of law. He had been a tenant of the building for four years. He knew that there were push buttons in the east wall of the corridor by which he could turn on the lights, but he did not do so. He also knew that there was an indicator above the elevator but he did not look at it. His actions in opening the door of the elevator shaft and reaching in to turn the light switch without first ascertaining whether the elevator car was at the first floor level, could scarcely be held to be the conduct of a reasonably prudent man unless, under all the circumstances, he could justifiably assume that

the elevator car was then at the first floor level. The evidence justifies a conclusion that the plaintiff could reasonably assume that when he opened the metal door he would find the elevator car at that level, and it cannot be said that he was negligent as a matter of law in acting as he did upon that assumption.

The defendant pleaded, as a special defense, assumption of the risk by the plaintiff based upon the fact that he made use of the elevator in the darkness without turning on the lights. The court correctly left this question to be determined by the jury as one of fact.

The defendant assigns error in the failure of the court in its charge to give an adequate definition of negligence as applied to an action of a tenant against a landlord, and its failure to charge as to the necessity and effect of notice to the defendant of the claimed dangerous condition of the premises, and that the burden was upon the plaintiff to prove such notice. The court charged that the plaintiff must prove that the defendant was negligent in one or more of the ways alleged in the complaint, and then gave the usual definition of negligence as the failure to use the care which a reasonably prudent person would use under the same or similar circumstances, and as the doing of something which a reasonably prudent person would not do, or the failure to do something which such person would do, under the same or similar circumstances. This was sufficient in the absence of a request for a more specific statement of the duty resting upon the defendant in the present case. It was unnecessary for the court to charge as to the necessity of notice to the defendant of the dangerous condition of the premises since upon the evidence that condition was created by its own agent. The court did charge that it was for the jury to decide whether some servant or agent

of the bank "with its knowledge" did something or failed to do something that constituted negligence as alleged in the complaint, and made it sufficiently clear that the burden of establishing this was upon the plaintiff.

The defendant assigns as error the statement appearing in one paragraph of the charge that the defendant claimed that the elevator operator turned out the lights in the corridor and left the key on the top of the mail box, and that the officers of the bank knew that the tenants were accustomed to use the key. It is obvious that the court was here referring to the plaintiff and not the defendant and that, if it used the word "defendant" in the charge as delivered, it was by inadvertence and could not have misled the jury.

During the second day of the trial, which was Thursday, counsel for the defendant learned of the existence of a written lease between the plaintiff and defendant containing a clause to the effect that the lessor should not be liable to the lessee for any damages suffered to person or property in or upon the defendant's building. Counsel thereupon requested permission to amend the answer to set up such matter as a special defense. The court took the motion under advisement, and upon the opening of court on the following Tuesday denied it. "When an amendment is offered during the trial to remedy a situation due to mispleading, the circumstances of the particular case must largely govern the disposition of the matter, such as an unreasonable delay in the disposition of the case, fairness to the opposing party, who may have been misled or been taken unawares, confusion of the issues, negligence of the party offering the amendment, and the like; hence, as said in *Gulliver* v. *Fowler* [64 Conn. 556, 565, 30 Atl. 852], 'An amendment of the pleadings, when the case is on trial, and the evidence

partly in, is never a matter of absolute right.' Much must necessarily be left to the sound discretion of the court and its action is reviewable only in the case of abuse." *Clayton* v. *Clayton,* 115 Conn. 683, 686, 163 Atl. 458. Our courts are liberal in allowing amendments, and unless there is sound reason for denying permission to amend it should be granted. *Bennett* v. *United Lumber & Supply Co.,* 114 Conn. 614, 617, 159 Atl. 572. The trial court stated some of its reasons for its ruling, which were in substance that the defendant was negligent since it knew of the existence of the lease since its execution in March, 1930, but did not offer to plead it until the parties were in the midst of the trial, that the plaintiff would be entitled to attack the amendment by demurrer or otherwise which would result in a mistrial or a hasty decision of an important point, and that it would not be fair to allow the amendment to be filed under the circumstances. These are reasons which might properly be considered by the trial court in reaching its considered judgment as to whether it ought to allow the amendment, and we cannot say that it abused its discretion in refusing to allow it.

After all the evidence was in, and after requests to charge and interrogatories had been filed, and after arguments of counsel had been concluded, the court suggested that the plaintiff amend his complaint. The plaintiff filed an amendment to the complaint in accordance with the suggestion of the court which was admitted over defendant's objection. The amendment included two specifications of negligence—leaving the elevator unguarded and failing to have a light switch outside the elevator—which were in the original complaint, but which were omitted (the plaintiff claims by inadvertence) when an amendment was later filed containing as an additional specification an allegation

of a violation of the building code of Middletown. It appears that evidence was offered by both parties covering the subject-matter of these specifications, and that the allowance of the amendment did no more than make the complaint correspond with the proof. The court may permit such an amendment at any stage of the trial (Practice Book, § 96), may suggest or even direct it, under proper circumstances, and its action is discretionary, and can be reviewed only when this discretion is abused. *Mazulis* v. *Zeldner,* 116 Conn. 314, 317, 164 Atl. 713; *Masi* v. *General Ice Cream Corp.,* 120 Conn. 259, 264, 180 Atl. 455. The amendment required no change in the answer, which had denied these allegations of negligence as they appeared in the original complaint. It was well within the discretion of the trial court to suggest the amendment and to permit it to be filed.

Over the objection of the defendant the plaintiff was permitted to testify upon his direct examination that shortly after he took an office in defendant's building he was told by the operator of the elevator of the presence of the key on the top of the mail box. The operator was an employee of the defendant in charge of the corridor and of the operation of the elevator, and his knowledge that the key was kept there and that the tenants of the building knew of it, was the knowledge of the defendant.

The defendant offered in evidence three photographs of the elevator door and the corridor which the court excluded on the ground that they were not fair photographs since the question of light was involved. Whether a photograph shows a situation with sufficient accuracy to render it admissible is a preliminary question for the court, whose action thereon can rarely be reviewed. *Voltz* v. *Orange Volunteer Fire Asso., Inc.,* 118 Conn. 307, 311, 172 Atl. 220. A photograph

offered for the purpose of proving the appearance of a physical object which cannot be produced in court or inspected by the jury, is secondary evidence; and its correctness or accuracy, like that of a map or diagram, must be proved before it can be received. *Cunningham* v. *Fair Haven & W. R. Co.*, 72 Conn. 244, 249, 43 Atl. 1047. It appears from the offer of these photographs in evidence that the jury had just returned from a view of the premises. This was the best evidence of their appearance, and it does not appear that the photographs possessed any added evidential value.

One ground of the defendant's motion to set aside the verdict was that the damages awarded plaintiff, in the sum of $15,000, were excessive. The plaintiff's injuries were very serious and came near to being fatal. He suffered two fractures of the skull, one in the left parietal region and one in the temporal region, with a severe concussion of the brain. A trephining operation was performed involving the removal of a circular section of the skull. There will be a permanent scar running from the left temple to the left ear. There were contusions of the left chest and the left hip and an injury to the ulnar nerve in the right arm. Plaintiff was in the hospital about six weeks, was unable to do any work until August 6th, when he began to do part time work, resuming full time work some time in September. His total medical and hospital expenses were over $1300. Plaintiff is a dentist and his net income for the year of the accident was approximately $2000 less than his average net income for the two preceding years. The injury to the ulnar nerve has resulted in a loss of strength in his right hand with a consequent handicap in the practice of his profession, but the possibility is that he will have between 80 and 90 per cent. of the function of the hand.

The verdict was a large one, but we cannot find upon the record that the trial court abused its discretion in refusing to set it aside as excessive.

There is no error.

In this opinion the other judges concurred.