# JANICE ANNE KOSINSKI *v.* ANGELA O. CARR
## (AC 28981)

Harper, Lavine and Peters, Js.

Argued October 27, 2008—officially released January 20, 2009

*Arthur C. Laske III*, for the appellant (defendant).

*Darcy S. McAlister*, with whom was *Mark R. Carta*, for the appellee (plaintiff).

*Opinion*

PETERS, J. This case concerns a real estate transaction in which neither the warranty deed for the conveyance of the property nor the antecedent contract of sale disclosed that the defendant seller's title was restricted by a covenant of record that forbade subdivision of the property. It is undisputed that, because this restriction was an encumbrance on the property, the plaintiff buyer is entitled to recover damages for breach of warranty under the warranty deed. See *Aczas* v. *Stuart Heights, Inc.*, 154 Conn. 54, 60, 221 A.2d 589 (1966). The defendant maintains, however, that the trial court improperly declined to hold that discovery of the restrictive covenant by the plaintiff's attorney prior to the closing barred the plaintiff from recovering additional damages for breach of the warranty contained in the contract for the sale of the property. In the absence of any evidence that this discovery was disclosed to the plaintiff until many years after the closing, the court rejected this contention. We agree with this ruling and the court's assessment of damages against the defendant. Accordingly, we affirm the judgment in favor of the plaintiff.

In an amended two count complaint filed July 7, 2005, the plaintiff, Janice Anne Kosinski, brought an action against the defendant, Angela O. Carr, to recover damages and attorney's fees for breach of warranty and breach of contract with respect to the conveyance of certain residential real estate in Norwalk. The plaintiff sought monetary damages to compensate for the failure of the defendant's warranty deed and of the underlying contract of sale to disclose the existence of a restrictive covenant that barred the plaintiff from subdividing the property into two building lots. The defendant denied her liability and filed a number of special defenses and a counterclaim including an allegation that timely discovery of the restrictive covenant by the plaintiff's attorney barred the plaintiff's reliance on this defect in the title. In response, the plaintiff denied that her attorney had disclosed his title review to her before the closing. After a trial to the court, the court found the issues in favor of the plaintiff. It awarded her damages of $100,000 for breach of warranty in the warranty deed and $96,041.74 in attorney's fees for breach of contract. In addition, the court awarded interest and costs to the plaintiff with respect to an offer of judgment filed by the plaintiff on June 22, 2004. See Practice Book (2004) § 17-18.

Although the defendant purports to be challenging many parts of the court's judgment, in this appeal she has pursued only three specific claims, none of which challenges the propriety of the court's award of $100,000 to the plaintiff on her claim of breach of warranty under the deed that conveyed the property to her.[1] Contesting only the court's award of attorney's fees for breach of contract, the defendant maintains

[1] As the court properly observed, even proof of the plaintiff's actual knowledge of the existence of a restrictive covenant at the time of the closing would not have barred her recovery for breach of warranty. See *Berube* v. *Nagle*, 81 Conn. App. 681, 687, 841 A.2d 724 (2004).

that the court improperly (1) declined to hold that the plaintiff had constructive knowledge of the restrictive covenant of which her attorney had actual knowledge, (2) rejected her claim that the contract was unenforceable because there was no meeting of the minds with respect to the undisclosed restrictive covenant and (3) abused its discretion in setting the amount of attorney's fees that it awarded to the plaintiff. We disagree with each of these claims.

The court's careful and detailed memorandum of decision contains the following undisputed findings of fact. The defendant took title to the property in dispute following the death of her husband, Howard Carr. The property had been conveyed to her husband and his former wife in a 1955 deed that included a proviso that "the premises . . . shall not be subdivided for the purposes of sale . . . ." Attorney Howard Ignal represented the defendant during the settlement of her husband's estate and, in that connection, received a copy of the 1955 deed. Ignal also represented the defendant when she decided to sell the property to the plaintiff and largely prepared both the contract of purchase and sale and the subsequent warranty deed. Neither of these documents made any reference to the restrictions contained in the 1955 deed.[2]

The plaintiff and her husband, Robert Kosinski, were represented by attorney Paul D. Plotnick in this real estate transaction. Plotnick reviewed the contract for purchase and sale and added a rider thereto. Prior to the closing, when he searched the title to the property in the Norwalk land records, Plotnick noted the restrictive covenants in the 1955 deed. He did not, however, disclose the existence of this restriction to his clients, to

---

[2] In paragraph four of the contract of sale, the defendant promised to convey to the plaintiff at the closing "marketable title to the premises free from all encumbrances and defects not excepted in this contract."

the defendant or to Ignal. Ignal never asked Plotnick for this information.

In preparing the warranty deed conveying the property to the plaintiff, Ignal relied on a "title report" from Plotnick that referred to a lis pendens and to taxes, but did not contain any information about the subdivision restriction. Ignal did not review the terms of the 1955 deed that he had received from the defendant when she inherited the property, and he did not perform a title search.[3]

Following the plaintiff's purchase of the property, her husband made efforts to subdivide it. Although he succeeded in getting the necessary approval from the local planning and zoning commission, he subsequently learned about the deed restrictions in the plaintiff's chain of title. He then, for the first time, was informed about these restrictions by Plotnick. Fearing litigation, the plaintiff and her husband abandoned their subdivision plan.

In a determination that has not been challenged in this appeal, the court concluded that the plaintiff had sustained her burden of proof that the restriction in the 1955 deed was valid and enforceable. That showing entitled the plaintiff to recover damages of $100,000 for breach of the warranty deed to reflect the diminished value of property that cannot be subdivided. The court declined, however, to award either consequential or incidental damages to the plaintiff on this count of the complaint.

The court also determined that the plaintiff was entitled to recover damages on the second count of her complaint, in which she sought attorney's fees and costs in accordance with a provision for such damages in

---

[3] The court noted in its memorandum of decision that "[f]or reasons not made known to the court, [a] third party complaint [against Ignal and his law firm] was withdrawn in the middle of the trial."

the contract of sale.[4] The court's award of $96,041.74 reflected its decision to reduce the recoverable amount to reflect the legal work that did not arise out of enforcement of the contract.

The defendant's appeal challenges this award of attorney's fees on two grounds. She maintains that the court improperly (1) rejected her contention that Plotnick's actual knowledge of the undisclosed restriction on subdivision barred any contractual recovery by the plaintiff and (2) awarded attorney's fees that were excessive. We disagree.

I

The defendant has proffered two arguments for reversal of the court's award of *any* attorney's fees to the plaintiff. She maintains that the court improperly faulted the manner in which she asserted her defense of "unclean hands," in which she argued that the discovery of the restrictive covenant by Plotnick before the closing justified denial of a remedy to the plaintiff for breach of contract. She further maintains that, if the court properly had addressed the issue, she should have prevailed on the merits of her argument that the plaintiff should be held to have had constructive knowledge of information known to her attorney.

In its memorandum of decision, the court expressly declined to consider the merits of the defense of unclean hands because, in the operative pleadings, the defendant had alleged that Plotnick's title search

---

[4] Pursuant to paragraph eighteen of the contract of sale, "covenants and agreements contained herein relating to rights, obligations or acts of the parties or either of them which are expressly to exist or be performed after delivery of the deed, shall survive such delivery." Pursuant to paragraph twelve of the contract of sale, "[t]he parties further agree that the party who is in default shall pay all costs and expenses incurred by the other party as a result of such other party's enforcement of this contract in Court, including a reasonable attorney's fee." As noted previously, the contract was drafted by the defendant's attorney, Ignal, and modified by Plotnick.

improperly "failed to disclose" the encumbrance on the land records. The court observed that this allegation was the opposite of the argument "being made for the first time in the posttrial papers that attorney Plotnick did know of the encumbrance." The court further noted the absence of any posttrial effort by the defendant to amend her pleadings. Finally, on the merits of the defendant's claim, the court observed that there might be "countervailing arguments."[5]

On appeal, the defendant faults the court's decision by asserting that the defense of unclean hands need not be pleaded specially and by suggesting, at even greater length, that the court abused its discretion by failing, sua sponte, to order amendment of the pleadings to conform to the proof. The plaintiff properly disputes these claims by referring to the absence of supporting authority in the cases on which the defendant relies.[6]

---

[5] Although the defendant filed a motion to reargue on other grounds, she did not further challenge the court's ruling on this issue.

[6] The defendant notes that Practice Book § 10-50 "specifically does not require that the special defense of 'unclean hands' be specially [pleaded] . . . ." We agree, however, with the plaintiff's observation that the list of special defenses in § 10-50 is illustrative rather than exhaustive. See, e.g., *Violano* v. *Fernandez*, 280 Conn. 310, 321, 907 A.2d 1188 (2006) ("governmental immunity must be raised as a special defense in the defendant's pleadings"). "The purpose of pleading is to apprise the court and opposing counsel of the issues to be tried, not to conceal basic issues until the trial is under way. . . . Practice Book § 120 [now § 10-50] lists *some* of the defenses which must be specially pleaded and proved." (Emphasis added.) *Pawlinski* v. *Allstate Ins. Co.*, 165 Conn. 1, 6, 327 A.2d 583 (1973). We agree with the plaintiff that the court properly determined that, because the defendant's claim is consistent with the allegations of the complaint, she was required to plead it as a special defense.

We recognize that in *Gest* v. *Gest*, 117 Conn. 289, 300–301, 167 A. 909 (1933), our Supreme Court noted, in dicta, that "[t]he application of the clean-hands maxim does not depend upon an averment in pleadings or the claims of the parties; it may and should be applied by the court of its own volition when a situation calling for it is disclosed on the trial by evidence or otherwise." As the plaintiff points out, however, *Gest* is distinguishable from the present case because that court made its statement in the context of an improper jury charge that had been given *despite* the plaintiff's explicit request for the proper charge.

We agree that the defendant has cited no persuasive authority for the proposition that, in the absence of a request on her own part, the court had an obligation to take the corrective action that she was warned to take and yet failed to take.[7]

The court's memorandum of decision does not identify the "countervailing arguments" that the court also considered in declining to rule on the defense of unclean hands. We note, however, that this defense is premised on the contention that the plaintiff had timely constructive knowledge of the restrictive covenant because Plotnick discovered the restrictive covenant prior to the execution of the *contract* for the sale of the property. We agree with the plaintiff that the record does not support this contention. Plotnick testified that he conducted the title search *after* he had received the fully executed contract of sale.[8] Consistent with this testimony, the court found that Plotnick conducted the search before the *closing*. There is, therefore, no finding that Plotnick's search predated the signing of the contract. If, in the defendant's view, there was evidence of record that would have supported such a finding, the defendant could have filed a motion for articulation,

---

[7] Cases that uphold a trial court's exercise of its discretion to order an amendment of the pleadings do not establish that the court was required to undertake such action sua sponte. See *Crowell* v. *Middletown Savings Bank*, 122 Conn. 362, 369–70, 189 A. 172 (1937); *Cheskus* v. *Christiano*, 120 Conn. 596, 599, 182 A. 131 (1935). Cases addressing a trial court's decision to grant or deny a *litigant's* request for amendment of the pleadings, such as *Miller* v. *Fishman*, 102 Conn. App. 286, 293–94, 925 A.2d 441 (2007), cert. denied, 285 Conn. 905, 942 A.2d 414 (2008), *Jacob* v. *Dometic Origo AB*, 100 Conn. App. 107, 111, 916 A.2d 872, cert. granted, 282 Conn. 922, 925 A.2d 1103 (2007) (appeal withdrawn August 7, 2007), and *Cook* v. *Lawlor*, 139 Conn. 68, 90 A.2d 164 (1952), do not address a court's duty to intervene *without* timely action by a litigant.

[8] During examination by the plaintiff's counsel, Plotnick testified as follows:

"Q. And do you know if you conducted that title search before or after you received the fully executed contract?

"A. It would have been afterward."

but she did not do so. See Practice Book § 66-5. Because it is the appellant's responsibility to provide this court with an adequate record for review, an appellate court will not remand a case to correct a deficiency the appellant should have remedied. *Miskimen* v. *Biber*, 85 Conn. App. 615, 624, 858 A.2d 806 (2004), cert. denied, 272 Conn. 916, 866 A.2d 1287 (2005). We conclude, therefore, that the court did not abuse its discretion in declining to address the merits of the defendant's argument that the doctrine of unclean hands provides a basis for denying the plaintiff a remedy for the defendant's breach of warranty in the contract of sale. The defendant's claim of error has neither legal nor factual support.

This conclusion is equally dispositive of the defendant's claim, raised for the first time on appeal, that the contract of sale was unenforceable because there was no meeting of the minds. Like the claim of unclean hands, this claim also depends on the defendant's unproven assertion that the plaintiff had constructive knowledge of the restrictive covenant at the time of her execution of the contract of sale. In light of the defendant's failure to establish the factual premise on which this contention is based, this belated attack on the validity of the contract of sale is unsustainable.

## II

The defendant's second principal claim challenges the propriety of the court's calculation of the attorney's fees to which the plaintiff was entitled pursuant to the terms of the contract of sale. After excluding fees for time spent by the plaintiff's attorneys in pursuing her claims under the warranty deed, the court awarded fees of $96,041.74 to the plaintiff. The defendant argues that these fees were excessive. We disagree.

The court awarded attorney's fees and costs to the plaintiff in accordance with paragraph twelve of the

contract of sale. It arrived at its award by reviewing a sworn affidavit by the plaintiff's chief counsel, documenting that she and another attorney at her firm had worked 608.8 hours on this case. The court found that the rates charged and the bills generated for the services rendered were "reasonable."[9] It reduced the chargeable fees by 30 percent, however, "to reflect the work not arising out of enforcement of the contract."[10]

"It is well established that we review the trial court's decision to award attorney's fees for abuse of discretion. . . . This standard applies to the amount of fees awarded . . . and also to the trial court's determination of the factual predicate justifying the award. . . . Under the abuse of discretion standard of review, we will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Citations omitted; internal quotation marks omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 252–53, 828 A.2d 64 (2003).

In this case, the defendant does not challenge the accuracy of the data on which the court relied in making its award. She asserts, instead, that because this case involved only a simple two count complaint raising

[9] We note that the court "carefully reviewed the time records and billing materials submitted by [the] plaintiff's attorneys . . . ." The affidavit of attorney Darcy S. McAlister referenced over forty invoices sent to the plaintiff for legal work performed by her firm during the three years between January 2, 2003, and December 14, 2006, photocopies of which were also presented at trial. This considerable and detailed record of the legal expenses incurred by the plaintiff supports her assertion that the court properly found them to be reasonable.

[10] The legal work that the court excluded from its award was the work attributable to the enforcement of the warranty deed rather than to the enforcement of the contract of sale.

issues that the court itself characterized as "straightforward and routine," the court improperly found that the number of hours expended by counsel was reasonable. We are not persuaded.

In its memorandum of decision, the court addressed the reasonableness of the fees billed. It noted "numerous instances where the plaintiff was not charged for the performance of relatively routine work." It further opined that "[w]hile it is possible to cavil at certain time entries of the attorneys and the time spent preparing this case seems extensive, it is well to remember that hindsight is not the proper test of reasonableness and that attorneys are not hired to leave stones unturned."

We agree with the plaintiff that this record does not demonstrate a manifest abuse of discretion by the court. As the court noted in a footnote to its opinion, although the defendant was supplied with unredacted copies of the billing statements of the plaintiff's attorneys, the defendant did not avail herself of the opportunity at trial to conduct further discovery or otherwise to respond to these documents. Under the circumstances of record, the court's conscientious efforts to make a fair award belie the defendant's unsupported claim that the court merely "rubber-stamped" the billings of the plaintiff's attorneys.

The judgment is affirmed.

In this opinion the other judges concurred.