******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

APPENDIX

U.S. BANK TRUST, N.A., TRUSTEE *v.*
LESLEY DALLAS ET AL.*

Superior Court, Judicial District of Litchfield

File No. CV-16-6013346-S

Memorandum filed May 24, 2021

*Proceedings*

Memorandum of decision on plaintiff's motion for summary judgment. *Motion granted.*

*Adam L. Avallone* and *Frank Velardi*, for the plaintiff.

*Gary L. Seymour*, for the named defendant.

*Opinion*

J. MOORE, J. The plaintiff, U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust, filed a motion for summary judgment in this foreclosure action on liability only on June 10, 2019 (#172). The defendant Lesley Dallas (Dallas) filed a memorandum in opposition to the motion for summary judgment on August 7, 2019. The court conducted a remote hearing on the motion for summary judgment on January 15, 2021. The plaintiff filed the requisite Federal Mortgage Foreclosure Moratorium Affidavit on April 20, 2021 (#185). For the reasons set forth below, the court grants the motion for summary judgment on liability only.

Dallas' memorandum in opposition and her supporting affidavit rely solely on her two remaining special defenses. There is nothing in the memorandum in opposition or in Dallas' affidavit that attempts to negate or undermine the conclusion that the plaintiff has established a prima facie case of foreclosure.

The plaintiff has, indeed, established a prima facie case for foreclosure by means of an affidavit submitted by the mortgage loan servicer of the plaintiff and by the exhibits attached thereto. The plaintiff's affidavit satisfies the prerequisites of General Statutes § 52-180, as construed in *RMS Residential Properties, LLC* v. *Miller*, 303 Conn. 224, 235–36, 32 A.3d 307 (2011), overruled in part on other grounds by *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 325 n.18, 71 A.3d 492 (2013). The plaintiff's affidavit establishes the following facts: (1) the defendant Dallas executed and delivered a promissory note on November 2, 2005, in favor of the original lender, Chase Bank USA, N.A., in the amount of $650,000; (2) through two assignments, the plaintiff has become the payee of the note and was in possession of the note prior to filing this lawsuit; (3) the defendant Dallas executed and delivered a mortgage on 1 Skiff Mountain Road, Sharon, Connecticut on November 2, 2005, in favor of the plaintiff's predecessor in interest, which mortgage was recorded on December 30, 2005; (4) as of May 22, 2019, the unpaid balance of the note is $632,361.19 plus interest, late charges and collections costs, and this unpaid balance, although due and payable, has not been paid; (5) the defendant Dallas has been in default under the terms of the note and mortgage since January 2, 2009; (6) notice of the default was dated on or about October 15, 2009, and was sent by first class mail, postage fully paid to the defendant Dallas; (7) the notice set forth the default, the action required to cure it and a date by which the default needed to be cured; (8) the defendant Dallas did not cure the default in timely fashion and, as a result, the plaintiff elected to accelerate the indebtedness owed and brought this foreclosure action; and (9) the defendant Dallas has not yet cured the default. These facts establish a prima facie case in a mortgage foreclosure

action under *GMAC Mortgage, LLC* v. *Ford*, 144 Conn. App. 165, 176, 73 A.3d 742 (2013).

Based on the Federal Mortgage Foreclosure Moratorium Affidavit recently filed in court, the court finds that the loan secured by this mortgage is not a " 'Federally Backed Mortgage Loan' " as defined by 15 U.S.C. 9056 (a) (2) of the CARES Act, and is, therefore, not subject to any federal foreclosure moratorium.

Dallas has, however, raised two special defenses and has argued that the court must, in an equitable action such as this foreclosure, review all of her pleadings liberally to see if she has raised any other defenses. The court will consider the issues raised by each of her special defenses, and then the argument about other equitable special defenses, seriatim.

The first special defense is entitled, "Residential Mortgage Fraud." This special defense, read generously, essentially makes two kinds of allegations. The first pertains to documents and alleges that the original lender and the existing plaintiff (called the plaintiff and the substitute plaintiff, respectively, in the special defense) "knowingly and wilfully omitted mandatory disclosure documents, and forged, fabricated and robo-signed documents they knew were untrue," that the original lender and that the plaintiff "knowingly, intentionally and wilfully" did so "to deceive, mislead and induce" Dallas to enter into the loan. The second is a very vague allegation that the original lender and the plaintiff made false representations that Dallas relied on to her detriment. As a result of this misconduct, "foreclosure cannot be had."

The second remaining special defense is entitled, "Fraud in the Inducement." This special defense alleges that the plaintiff is liable for the actions of its predecessor lender, that the plaintiff, its predecessor and their agents deliberately either made false statements to Dallas or deceitfully omitted to tell Dallas important facts about the loan, and that Dallas reasonably relied on these statements or omissions to her detriment.

In sum, the special defenses aver that some documents were "forged, fabricated and robo-signed," that some documents were not given to the defendant and that someone on behalf of the plaintiff made false representations that Dallas relied on to her detriment.

It is hornbook law that " 'the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . When documents submitted in support of a motion

for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue.' " *Ramirez* v. *Health Net of the Northeast, Inc.*, 285 Conn. 1, 11, 938 A.2d 576 (2008); see also *Baldwin* v. *Curtis*, 105 Conn. App. 844, 850–51, 939 A.2d 1249 (2008).

In this case, as set forth above, the plaintiff has established a prima facie case for foreclosure. It is incumbent on Dallas to not only claim that there is a genuine issue of material fact in regard to her special defenses, but also to provide evidence in support of that claim.

Such evidence may be in the form of an affidavit. Affidavits must be based on personal knowledge, set forth facts that would be admissible in evidence, and show affirmatively that the affiant is competent to testify. Practice Book § 17-46; *Barrett* v. *Danbury Hospital*, 232 Conn. 242, 251, 654 A.2d 748 (1995). Affidavits that fail to meet the criteria of Practice Book § 17-46 are defective and may not be considered to support the judgment. Defects in affidavits include such things as assertions of facts or conclusory statements. See *Hoskins* v. *Titan Value Equities Group, Inc.*, 252 Conn. 789, 793–94, 749 A.2d 1144 (2000); *Gupta* v. *New Britain General Hospital*, 239 Conn. 574, 596–97, 687 A.2d 111 (1996). "Mere statements of legal conclusions . . . are not sufficient to raise the issue [of material fact]." *United Oil Co.* v. *Urban Redevelopment Commission*, 158 Conn. 364, 377, 260 A.2d 596 (1969).

The only potential source of evidence filed by Dallas in her effort to raise a genuine issue of material fact is her own affidavit, which is appended to her memorandum in opposition to this motion. Paragraph 6 of Dallas' affidavit sets forth her claim of forgery. In this paragraph, Dallas swears that, at some time after the closing, someone "supplied a bogus 'chicken scratch signature' on my mortgage documents above the 'WITNESS' line with no name attached beneath [it] in a ridiculous attempt to try and make it look as if there was a witness present at closing. . . . I have no idea who signed it, and I stress again . . . at no time was this supposed 'chicken scratch witness' present at my home for my closing, and at no later time did this 'chicken scratch witness' ever appear before me to confirm that I had executed the mortgage."

Such a claim of forging a witness' signature or leaving out a witness' signature cannot create a genuine issue of material fact under a recent Appellate Court decision. Failure to include a witness' signature or signatures is remedied under General Statutes § 47-36aa, even when there is a claim of fraud, unless the purported victim files a lawsuit challenging the validity of the mortgage

and records a lis pendens within two years after the mortgage is recorded. *Wells Fargo Bank, N.A.* v. *Fratarcangeli*, 192 Conn. App. 159, 167–68, 217 A.3d 649 (2019).

As the Appellate Court put it, "[t]he express language of § 47-36aa (a) (2) provides, inter alia, that any mortgage containing a conveyancing defect as a result of being 'attested by one witness only or by no witnesses' is 'as valid as if it had been executed without the defect or omission' unless an action challenging the validity of the mortgage is commenced and a notice of lis pendens is recorded within two years after the mortgage is recorded. There is no language in § 47-36aa (a) that limits the applicability of subdivision (2) or otherwise carves out a fraud exception for instances where it is alleged that the lack of a valid second attesting witness resulted from a fraudulent act. We conclude that the meaning of the validating act with regard to the question before us is plain and unambiguous and, therefore, our inquiry as to such meaning ends. See *In re Elianah T.-T.*, 326 Conn. 614, 624, 165 A.3d 1236 (2017) ('[i]f the legislature's intent is clear from the statute's plain and unambiguous language, our inquiry ends'). Simply put, § 47-36aa does not contain a fraud exception, and we do not write one into the statute. We further note that when the legislature wants to carve out a fraud exception, it knows how to do so. See, e.g., General Statutes § 12-415 (f) ('[e]xcept in the case of fraud . . . every notice of a deficiency assessment shall be mailed within three years after the last day of the month following the period for which the amount is proposed to be assessed or within three years after the return is filed, whichever period expires later' . . . ).

"Applying the language of § 47-36aa (a) (2) to the present case, we conclude that, in the absence of a timely filed action specifically challenging the validity of the mortgage at issue on the basis of an enumerated conveyancing defect, namely, the lack of a valid second witness as otherwise required by [General Statutes] § 47-5 (a), the validating act automatically cured such defect or omission." (Emphasis in original; footnote omitted.) *Wells Fargo Bank, N.A.* v. *Fratarcangeli*, supra, 192 Conn. App. 167–68.

Dallas has presented no evidence that she filed an action challenging the validity of the mortgage or recorded a lis pendens within two years of the mortgage having been recorded, on or before December 30, 2007. Therefore, she cannot succeed on a claim that the witness' signature on the mortgage was forged or that the mortgage lacked the requisite number of witnesses.

Neither can Dallas succeed on her claim that someone acting on behalf of the plaintiff made fraudulent representations to her or withheld mortgage related documents from her.

Once again, Dallas' affidavit is the only document she submitted in an attempt to put evidence in front of the court. Paragraphs 3, 4, 5 and 6 detail the false statements or omissions allegedly made to defraud Dallas. The court will not rehash them at this point, because of Dallas' failure to create any genuine issue of material fact that would serve to tie these statements to either the plaintiff or its predecessor.

Specifically, Dallas mentions only two people who made statements to her about the mortgage, one an unnamed "representative from Black Dog Title," the mortgage broker, and the other an attorney named "Michael Vernile," whom she terms the "bank's attorney/title representative . . . ." Dallas also swears that Vernile never provided her with copies of the requisite mortgage documents and seems to swear that either the unnamed representative or someone else associated with Black Dog Title never provided her with the requisite documents before the closing. Black Dog Title is neither the plaintiff's predecessor nor the plaintiff.

Although the existence of an agency relationship and whether a person is acting within the bounds of his authority as an agent are factual questions; *Barasso* v. *Rear Still Hill Road, LLC*, 81 Conn. App. 798, 805, 842 A.2d 1134 (2004); Dallas' affidavit is totally devoid of any evidence from which the court could find that Black Dog Title, its unnamed representative and Vernile were agents of the plaintiff's predecessor, much less of the plaintiff, and even less so that Black Dog Title was authorized to make statements pertaining to the mortgage issued by the plaintiff's predecessor. Although Dallas avers that she relied "in good faith to my great harm on Chase Bank," she cites to no conversations with Chase Bank. Moreover, she provides no evidence of any link between Chase Bank, the plaintiff's predecessor, and Black Dog Title. All that the court knows is that Black Dog Title placed the mortgage. Finally, Dallas' statement that Vernile was the "bank's attorney/title representative" is not supported by any facts that could possibly show that Vernile was the agent of the plaintiff's predecessor, much less of the plaintiff. The only fact that Dallas provided about Vernile was that he was a "Commissioner of the Superior Court." (Emphasis omitted.) Dallas' counsel's statements in his memorandum in opposition to this motion that Vernile was the "express agent of Black Dog Title," and that Black Dog Title was "an agent of Chase Bank USA, the originating lender," are not evidence before the court, as they were not sworn to. At best, Dallas' statement about Vernile and the "[b]ank" is the kind of unsupported legal conclusion denounced by applicable case law as insufficient to raise any kind of genuine issue of material fact. *United Oil Co.* v. *Urban Redevelopment Commission*, supra, 158 Conn. 377.[1]

A defendant seeking to invalidate a mortgage by rea-

son of claimed fraud must demonstrate that the lender either participated in making the false representation, was aware of the false representation or that the individual who perpetrated the alleged fraud was the agent of the lender. See *Chase Manhattan Mortgage Corp.* v. *Machado*, 83 Conn. App. 183, 188–89, 850 A.2d 260 (2004). Dallas has failed to submit even a scintilla of evidence in support of any one of these required alternative elements of a special defense of fraud in a foreclosure action.

Therefore, insofar as Dallas' remaining two special defenses attempt to raise a genuine issue of material fact as to the claims of fraudulent representations or omissions, they fail to do so.

Dallas also argues that the court should construe her special defenses liberally to suss out elements of the special defenses of unclean hands and equitable estoppel.

There are fatal problems for Dallas with both special defenses.

Unclean hands must be specifically pleaded. See *Kosinski* v. *Carr*, 112 Conn. App. 203, 209 n.6, 962 A.2d 836 (2009). Dallas failed to do so.

Equitable estoppel requires the same kind of link between the plaintiff or its predecessor and the person who, by means of words or actions, causes another to believe in certain facts that the other then relied on. See *Johnnycake Mountain Associates* v. *Ochs*, 104 Conn. App. 194, 208–209, 932 A.2d 472 (2007), cert. denied, 286 Conn. 906, 944 A.2d 978 (2008). As with the allegations of fraud, Dallas has failed to provide any evidence that would link the plaintiff or its predecessor to the words or actions of Black Dog Title's unnamed representative or Vernile.

For all of the above stated reasons, the court grants the motion for summary judgment as to the issue of liability.

* Affirmed. *U.S. Bank Trust, N.A.* v. *Dallas*, 213 Conn. App.    ,    A.3d (2022).

[1] This affidavit stands in stark contrast to the affidavit discussed in *Barasso* v. *Rear Still Hill Road, LLC*, supra, 81 Conn. App. 804. The affidavit submitted in opposition to summary judgment in that case clearly stated that the plaintiff's brother, Ralph Barasso, "repeatedly had represented to the defendants that he was an authorized agent of both the plaintiff and [the plaintiff's alleged business partner] . . . ." Id.