******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

WELLS FARGO BANK, N.A. *v.* ERIC
LORSON ET AL.
(AC 38806)

Elgo, Bright and Beach, Js.

*Syllabus*

The plaintiff bank sought to foreclose a mortgage on certain real property owned by the defendant homeowners. The parties had entered into a forbearance agreement under which the plaintiff agreed to accept trial period payments on the defendants' delinquent mortgage loan for three months after which the plaintiff would determine whether to enter into a mortgage modification agreement with the defendants. After the defendants made their first payment, the plaintiff requested that they provide it with documentation that a certain judgment lien on the defendants' property had been discharged and also notified the defendants that the modification of the mortgage loan could not be completed until the lien issue was resolved. The defendants did not respond to the plaintiff's request. After the pleadings were closed, the defendants sought to amend their answer to add a special defense alleging that the plaintiff had failed to comply with certain United States Department of Housing and Urban Development regulations pertaining to home mortgage foreclosure actions. The court sustained the plaintiff's objection to the defendants' request to amend their answer and, after a hearing, rendered judgment of strict foreclosure. On appeal, the defendants claimed, inter alia, that the plaintiff had failed to prove its prima facie case because it presented insufficient evidence that it complied with the applicable federal regulations that are prerequisites to bringing a home mortgage foreclosure action. *Held*:

1. The trial court's determination that the plaintiff had proven its prima facie case was not clearly erroneous; it was not the plaintiff's burden to prove compliance with the applicable federal regulations as a condition precedent to bringing its foreclosure action, and the defendants' failure to plead noncompliance with those regulations as a special defense resulted in their waiver of their noncompliance claim.

2. The trial court correctly determined that the defendants failed to prove their special defense of equitable estoppel; the defendants failed to point to specific conduct of the plaintiff that caused the defendants to believe that they had to make only three trial period payments to obtain a permanent loan modification, and the evidence contradicted the defendants' claim that the plaintiff represented to them that the loan modification would be final once the three payments were complete, as the plaintiff notified the defendants before they made their second payment that the loan modification could not be completed unless the judgment lien was resolved.

3. The defendants could not prevail on their claim that the trial court's finding that they failed to prove their special defense of unclean hands was clearly erroneous: the court reasonably could have concluded that the plaintiff did not engage in wilful misconduct, as the defendants presented no evidence that the plaintiff acted with unclean hands and no evidence contrary to the plaintiff's evidence that it complied with the applicable federal regulations; moreover, contrary to the defendants' allegation that the plaintiff engaged in misleading conduct when it entered into the forbearance agreement without first informing them that they would be required to satisfy the judgment lien, there was evidence that that agreement provided that a loan modification was subject to final approval, and the plaintiff notified the defendants on multiple occasions that they would not receive a final loan modification until the lien was resolved.

Argued January 18—officially released July 10, 2018

*Procedural History*

Action to foreclose a mortgage on certain of the defendants' real property, and for other relief, brought

to the Superior Court in the judicial district of Fairfield and tried to the court, *Hon. Richard P. Gilardi*, judge trial referee; judgment of strict foreclosure, from which the defendants appealed to this court; thereafter, the court, *Hon. Richard P. Gilardi*, judge trial referee, issued an articulation of its decision. *Affirmed*.

*Ridgely Whitmore Brown*, with whom was *Benjamin E. Gershberg*, for the appellants (defendants).

*David M. Bizar*, for the appellee (plaintiff).

*Opinion*

ELGO, J. The defendants, Eric Lorson and Laurin Maday, appeal from the judgment of strict foreclosure rendered by the trial court in favor of the plaintiff, Wells Fargo Bank, N.A. On appeal, the defendants claim that the court improperly found that the plaintiff met its burden of proving its prima facie case and that the defendants failed to prove their special defenses of equitable estoppel and unclean hands. We affirm the judgment of the trial court.

The following facts are relevant to this appeal. The defendants and the McCue Mortgage Company (McCue) executed a promissory note on December 1, 2008 (note). The note was secured by a mortgage on the defendants' property at 40 McGuire Road in Trumbull (property), in favor of Mortgage Electronic Registration Systems, Inc., as nominee for McCue. The mortgage was recorded on the Trumbull land records on December 1, 2008. The mortgage was assigned to the plaintiff on December 16, 2011, and the assignment was recorded on the Trumbull land records on December 21, 2011. It is undisputed that the plaintiff is the holder of both the note and the mortgage.

The plaintiff filed this foreclosure action on October 19, 2011. The complaint alleged that the note and mortgage were in default by virtue of nonpayment of the installments of principal and interest due on November 1, 2010, and each and every month thereafter. The complaint further alleged that the plaintiff is entitled to collect the debt evidenced by the note and to enforce the terms of the mortgage, that the plaintiff had elected to accelerate the balance of the note, and that the plaintiff requested a foreclosure of the mortgaged premises.

The court referred the parties to a foreclosure mediation program on December 1, 2011. During that program, the parties entered into a special forbearance agreement (agreement) dated August 23, 2012, which identified twenty-two consecutive months of nonpayment. According to the terms of the agreement, the plaintiff agreed to "temporarily [accept] reduced installments" in the amount of $3009.07 per month for a period of three months.[1] Section 2 of the agreement provides in relevant part: "Upon successful completion of the [a]greement, your loan will not be contractually current. Since the installments may be less than the total amount due you may still have outstanding payments and fees. Any outstanding payments and fees will be reviewed for an option to bring the loan current. If approved for an option, based on investor guidelines, this will satisfy the remaining past due payments on your loan and we will send you a plan agreement. An additional payment may be required." Section 3 of the agreement provides: "The lender is under no obligation to enter into any further agreement, and this [a]greement shall not con-

stitute a waiver of the lender's right to insist upon strict performance in the future."

The defendants made the first payment of $3009.07 in accordance with the agreement prior to September 22, 2012. On October 8, 2012, the plaintiff sent the defendants a letter requesting a "Notice of Release of Mortgage or Discharge of Judgment/Lien" and stating that the plaintiff is "unable to complete the final modification" of the loan until the title issue is resolved. A property title report was enclosed with the letter. The lien at issue was a judgment lien on the property from a dispute with an insurance company about the value of a vehicle Lorson owned that had been declared a total loss (judgment lien).[2]

On October 19, 2012, the foreclosure mediator issued a final report that indicated that the final mediation was held on July 31, 2012, the mediation period expired on September 1, 2012, and the mediation was terminated.

The defendants did not provide the plaintiff with information in response to the October 8, 2012 letter, but instead continued to make monthly payments to the plaintiff for the amount specified in the agreement beyond November, 2012, and through May, 2013. On March 4, 2013, the plaintiff sent the defendants a follow-up letter requesting documentation to resolve the title issue regarding the judgment lien on the property.[3] On April 10, 2013, the plaintiff sent the defendants another letter, stating that "[t]here are additional liens on [the defendants'] property that prevent [the plaintiff] from completing [the defendants'] request for mortgage assistance." On April 30, 2013, the plaintiff sent yet another letter to the defendants requesting documentation of the remaining lien balance. The letter specified that the requested documentation must be received by May 30, 2013. The defendants did not resolve the judgment lien.

The defendants filed an answer on July 19, 2013, in which they effectively denied each allegation and left the plaintiff to its proof. The defendants also filed two special defenses alleging unclean hands and equitable estoppel. The plaintiff filed a motion for summary judgment on November 12, 2013. The defendants filed an amended answer and special defenses along with their objection to the plaintiff's summary judgment motion on February 19, 2014. In the amended answer, the defendants alleged a third special defense titled "Mortgage Modification Agreement," claiming that the plaintiff refused to issue a permanent modification and "breached the terms of the agreement" by requiring payment of the judgment lien.

The court denied the plaintiff's motion for summary judgment on March 21, 2014, ruling that "the counteraffidavit submitted by the defendants in opposition to the motion raises issues of fact relating to the defendants'

special defenses of unclean hands and equitable estoppel to be resolved at trial." The plaintiff filed a reply to the defendants' special defenses and a certificate of closed pleadings on October 22, 2015.

After the plaintiff filed a certificate of closed pleadings, the defendants moved to amend their answer on October 30, 2015. In the proposed amended answer, the defendants added a special defense titled "breach of contract," which alleged the plaintiff's noncompliance with various regulations of the United States Department of Housing and Urban Development as set forth in 24 C.F.R. § 203.500 et. seq. (HUD regulations). The plaintiff filed an objection to the defendants' request to amend on November 9, 2015, and the court sustained the plaintiff's objection on December 1, 2015, the first day of trial.

Following a two day bench trial, the court rendered judgment of strict foreclosure in favor of the plaintiff on January 6, 2016. On January 20, 2016, the defendants filed this appeal. The defendants filed a motion for articulation on August 4, 2016, requesting an explanation for the judgment of strict foreclosure. On November 25, 2016, the court issued a written response "to the allegations contained in the defendants' motion [for] articulation and, specifically, the defendants' misrepresentations and failure to disclose necessary evidence within their knowledge." In that response, the court stated: "Based on the factual history of this litigation, it is the finding of this court that the plaintiff has established [its] burden of proof with respect to the allegations of the complaint. The court further finds that the defendants failed to submit sufficient evidence with respect to their burden of proof with respect to the denial of the complaint, as well as the special defenses of unclean hands and equitable estoppel. Accordingly, judgment is entered in favor of the plaintiff with respect to the complaint and special defenses." The court denied the motion for articulation and stated as follows: "With respect to the motion for articulation, it is the finding of the court that the motion is based on the misrepresentations and intentional omissions of necessary evidence. The docket sufficiently provides the basis for the rulings by the court. Accordingly, the motion for articulation is denied."

On April 4, 2017, the defendants filed a motion for review of the court's articulation with this court, which we denied as untimely. Additional facts will be set forth as necessary.

I

The defendants challenge the court's determination that the plaintiff had proven its prima facie case, which was based on their claim that the plaintiff failed to present sufficient evidence that it had complied with all applicable HUD regulations that are prerequisites to

bringing a foreclosure action. In response, the plaintiff contends that noncompliance with HUD regulations must be raised as a special defense and that the defendants failed to do so. Alternatively, the plaintiff argues that even if it had the burden of proving compliance with HUD regulations in the absence of a special defense, there is sufficient evidence of the plaintiff's compliance, and, therefore, the court's finding that the plaintiff established its prima facie case was not clearly erroneous. We conclude that the defendants had the affirmative duty to plead noncompliance with HUD regulations as a special defense and that their failure to do so is fatal to their claim.

The following additional facts are relevant to the defendants' claim. The defendants' mortgage was guaranteed and insured by the Federal Housing Administration (FHA). The note and mortgage reference HUD regulations.[4] Section 6 (b) of the note provides in relevant part that "[i]f Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary [of HUD] in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary [of HUD] will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations." Section 9 (a) of the mortgage deed provides in relevant part: "Lender may, except as limited by regulations issued by the Secretary [of HUD] in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument . . . ." It is uncontested that the HUD regulations apply to the defendants' mortgage.

The defendants neither filed a motion to strike the plaintiff's complaint nor timely raised the plaintiff's noncompliance with HUD regulations as a special defense. Following the filing of the certificate of closed pleadings on October 22, 2015, the defendants moved to amend their answer for a second time on October 30, 2015. The second requested amended answer added thirty-three pages to the first amended answer and included three additional special defenses with a twelve count counterclaim. One of the additional special defenses alleged that the plaintiff failed to comply with nineteen different HUD regulations and requirements that, according to the defendants, were conditions precedent to acceleration of the debt and commencement of this foreclosure action. The plaintiff objected to the defendants' request as untimely and noted that trial was already scheduled for December 1, 2015. In its objection to the defendants' request, the plaintiff argued that "to allow [the] defendants an additional opportunity to

amend their pleadings on the eve of trial, especially when such an amendment would fundamentally alter the procedural posture of the case would, in effect, amount to pleading by ambuscade and would work extreme prejudice and delay upon the plaintiff." The court denied the defendants' request to amend their answer and sustained the plaintiff's objection on December 1, 2015.[5]

Moreover, at trial, an employee of the plaintiff, Dustin Green, was cross-examined by the defendants' counsel regarding the plaintiff's compliance with the HUD regulations.[6] Notably, Green testified that the plaintiff was compliant, and the defendants produced no evidence to the contrary, despite having had the opportunity to testify, produce witnesses, and cross-examine the plaintiff's witness. The court never precluded the defendants from presenting evidence, either through their own testimony or otherwise, of the plaintiff's alleged violation of HUD regulations. At the conclusion of trial, the court found that the plaintiff had established its burden of proof with respect to the allegations of the complaint. The defendants challenge the propriety of that finding.

At the outset, we note that to the extent that the defendants' claim involves construing rules of practice, our review is plenary. *Howard-Arnold, Inc.* v. *T.N.T. Realty, Inc.*, 145 Conn. App. 696, 711, 77 A.3d 165 (2013) ("the interpretation of the requirements of the rules of practice presents a question of law, over which our review is plenary" [internal quotation marks omitted]), aff'd, 315 Conn. 596, 109 A.3d 473 (2015). To the extent that the defendants' claim involves the factual findings of the court, however, our review is limited to a determination of whether the court's findings are clearly erroneous. "[W]hen reviewing findings of fact, we defer to the trial court's determination unless it is clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Under the clearly erroneous standard of review, a finding of fact must stand if, on the basis of the evidence before the court and the reasonable inferences to be drawn from that evidence, a trier of fact reasonably could have found as it did." (Internal quotation marks omitted.) *CitiMortgage, Inc.* v. *Gaudiano*, 142 Conn. App. 440, 444–45, 68 A.3d 101, cert. denied, 310 Conn. 902, 75 A.3d 29 (2013).

"[D]ue to the adversarial nature of our judicial system, [t]he court's function is generally limited to adjudicating the issues *raised by the parties* on the proof they have presented and applying appropriate procedural sanctions on motion of a party. . . . Connecticut is a fact pleading jurisdiction. . . . Pleadings have an essential purpose in the judicial process. . . . The pur-

pose of pleading is to apprise the court and opposing counsel of the issues to be tried . . . . For that reason, [i]t is imperative that the court and opposing counsel be able to rely on the statement of issues as set forth in the pleadings. . . . As Justice Cardozo has written: justice, though due to the accused, is due to the accuser also. . . . Fairness is a double-edged sword and both sides are entitled to its benefits throughout the trial." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Somers* v. *Chan*, 110 Conn. App. 511, 528–29, 955 A.2d 667 (2008); see also 71 C.J.S., Pleading § 2 (2018) ("purpose of pleadings is to frame, present, define, and narrow the issues, and to form the foundation of, and to limit, the proof to be submitted on the trial").

We first address whether compliance with the HUD regulations was part of the plaintiff's burden of proving its prima facie case. The defendants argue that the compliance with HUD regulations was a condition precedent to the enforcement of the note and mortgage and that the plaintiff bore the burden of proving that all such regulatory requirements had been satisfied as a part of its prima facie case. This court has determined that the plaintiff must prove by a preponderance of the evidence that it satisfied any conditions precedent to establish a prima facie case in a foreclosure action. See *Wells Fargo Bank, N.A.* v. *Strong*, 149 Conn. App. 384, 392, 89 A.3d 392 (2014) ("[i]n order to establish a prima facie case in a mortgage foreclosure action, the plaintiff must prove by a preponderance of the evidence that . . . any conditions precedent to foreclosure, as established by the note and mortgage, have been satisfied" [internal quotation marks omitted]), cert. denied, 312 Conn. 923, 94 A.3d 1202 (2014). The defendants argue that the plaintiff failed to establish compliance with several HUD regulations, including 24 C.F.R. §§ 203.501, 203.605 (a), 203.614 and 203.616. In addition, the defendants claims that the plaintiff failed to establish compliance with HUD Mortgagee Letter 2000-05. Although there is no dispute that the plaintiff was required to comply with the HUD regulations, we are not persuaded that it was the plaintiff's burden to prove compliance as part of its prima facie case.

Courts outside of Connecticut have recognized that, in a foreclosure action involving an FHA-insured mortgage, a plaintiff's noncompliance with the HUD regulations is a valid affirmative defense. See, e.g., *Williams* v. *National School of Health Technology, Inc.*, 836 F. Supp. 273, 283 (E.D. Pa. 1993) ("Pennsylvania courts have recognized a mortgagee's failure to comply with HUD forbearance regulations as an equitable defense to foreclosure"), aff'd, 37 F.3d 1491 (3d Cir. 1994); *Federal National Mortgage Assn.* v. *Moore*, 609 F. Supp. 194, 196 (N.D. Ill. 1985) ("[i]n Illinois, a mortgagee's failure to comply with the mortgage servicing regulations can be raised in a foreclosure proceeding as an affirmative

defense"); *Lacy-McKinney* v. *Taylor, Bean & Whitaker Mortgage Corp.*, 937 N.E.2d 853, 864 (Ind. App. 2010) (defendant can "properly raise as an affirmative defense that [the plaintiff] failed to comply with the HUD servicing regulations prior to commencing this foreclosure action"); *Wells Fargo Home Mortgage, Inc.* v. *Neal*, 398 Md. 705, 727, 922 A.2d 538 (2007) (borrower could raise violation of HUD regulations as defense to foreclosure); *Federal Land Bank of Saint Paul* v. *Overboe*, 404 N.W.2d 445, 449 (N.D. 1987) ("various courts have held that the failure of a lender to follow HUD regulations governing mortgage servicing constitutes a valid defense sufficient to deny the lender the relief it seeks in a foreclosure action").

Recognizing noncompliance with HUD regulations as an affirmative defense is in accord with HUD's intent in drafting the provisions of the mortgage documents. HUD's interpretation of the effect of the regulations on a foreclosure action is relevant to our analysis. "When dealing with uniform contract language imposed by the United States, it is the meaning of the United States that controls." *Kolbe* v. *BAC Home Loans Servicing, LP*, 738 F.3d 432, 442 (1st Cir. 2013).

In June, 1989, HUD issued a "Notice of Policy" statement (HUD policy statement), published in the Federal Register, addressing the incorporation of HUD's servicing requirements into a mortgage. In that statement, HUD suggested that mortgagors may assert violations of HUD regulations as a defense. See Requirements for Single Family Mortgage Instruments, 54 Fed. Reg. 27,599 (June 29, 1989); see also *Wells Fargo Home Mortgage, Inc.* v. *Neal*, supra, 398 Md. 724 (HUD notice "states that mortgagors may assert a violation of the HUD regulations as a defense, presumably to a foreclosure action by the mortgagee").

The HUD policy statement provides in relevant part: "We note that the proposed mortgage language does not incorporate all of HUD's servicing requirements into the mortgage, but simply prevents acceleration and foreclosure on the basis of the mortgage language when foreclosure would not be permitted by HUD regulations. For example, [24 C.F.R. §] 203.606, specifically prohibits a mortgagee from foreclosing unless three full monthly payments due on the mortgage are unpaid. As long as this requirement remains in the regulations, we do not expect mortgagees to violate it even though the mortgage fails to repeat the requirement, and *we believe that a borrower could appropriately raise the regulatory violation in his or her defense*. If a mortgagee has violated parts of the servicing regulations which do not specifically state prerequisites to acceleration or foreclosure, however, the reference to regulations in the mortgage would not be applicable. HUD retains the general position recited in [24 C.F.R. §] 203.500, that whether a mortgagee's refusal or failure to comply with

servicing regulations is *a legal defense is a matter to be determined by the courts*." (Emphasis added.) Requirements for Single Family Mortgage Instruments, supra, 54 Fed. Reg. 27,599. On the basis of the foregoing precedent from other jurisdictions, and HUD's policy statement, we conclude that in a foreclosure action involving an FHA insured mortgage, a defendant may raise the plaintiff's noncompliance with HUD regulations as a special defense.

Having determined that the defendants could properly raise the plaintiff's noncompliance with HUD regulations as a special defense, we consider whether the defendants had the affirmative duty to *plead* that defense. We conclude that they did have such a duty.

"Practice Book § 10-50 provides that [f]acts which are consistent with [the plaintiff's allegations] but show, notwithstanding, that the plaintiff has no cause of action, must be specially alleged." (Internal quotation marks omitted.) *Commissioner of Mental Health & Addiction Services* v. *Saeedi*, 143 Conn. App. 839, 853, 71 A.3d 619 (2013). Section 10-50 "addresses whether a defense must be specially pleaded. . . . The purpose of § [10-50] is to apprise the court and opposing counsel of the issues to be tried, not to conceal basic issues until the trial is under way . . . ." (Internal quotation marks omitted.) *Absolute Plumbing & Heating, LLC* v. *Edelman*, 146 Conn. App. 383, 390, 77 A.3d 889, cert. denied, 310 Conn. 960, 82 A.3d 628 (2013). Although it is true that § 10-50 does not specifically require that the special defense alleging the plaintiff's noncompliance with HUD regulations be specifically pleaded as a special defense, the "list of special defenses in § 10-50 is illustrative rather than exhaustive." *Kosinski* v. *Carr*, 112 Conn. App. 203, 209 n.6, 962 A.2d 836 (2009).

The plaintiff's complaint makes no reference to the HUD regulations. As noted previously in this opinion, the defendants did not move to strike the complaint because it failed to allege an essential fact. Nor did their answer provide any notice to the plaintiff that compliance with HUD regulations was in any way an issue in this case. The plaintiff, thus, put on evidence in support of the allegations actually pleaded in the complaint to prove its prima facie case. The defendants' reliance on allegations of noncompliance with HUD regulations is essentially a defense that is consistent with the plaintiff's allegations but, if proven, would show that the plaintiff has no cause of action. As such, allegations of noncompliance needed to be raised as a special defense.

To hold otherwise would encourage trial by ambuscade and impose an unnecessary and undue burden on plaintiffs in foreclosure matters. There are potentially dozens of HUD requirements that a defendant could argue are necessary prerequisites to the bringing of a foreclosure action. The defendants' proposed amended

complaint identified nineteen such requirements with which the plaintiff allegedly failed to comply. It is inconsistent with our expectation that trials are not supposed to be a game of blindman's bluff to expect a plaintiff in a foreclosure action to anticipate which HUD requirement a defendant will seize upon to argue after the plaintiff rests that it has failed to prove its case. Foreclosure trials, and motions for summary judgment in foreclosure actions, in which the facts are largely undisputed, would become drawn-out, expensive affairs as a plaintiff presents evidence regarding a lengthy list of requirements. Moreover, because plaintiffs typically are entitled to an award of attorney's fees upon the entry of judgment, the parties truly harmed by imposing such requirements on foreclosing plaintiffs are the borrowers who will be required to pay the additional fees caused by such a procedure. Consequently, in this particular context, it makes much more sense to require the defendant to plead the specific requirements that have not been met and bear the burden of proving the plaintiff's noncompliance with those requirements. Not only is this more logical and more fair to plaintiffs and the vast majority of defendants who have no interest in raising such issues, it also is consistent with the manner in which other states have addressed the issue and the guidance provided by HUD itself.

It is uncontested that defendants failed to plead the plaintiff's noncompliance with the HUD regulations as a special defense or a specific denial.[7] After the certificate of closed pleadings had been filed, the defendants attempted to raise the issue as a special defense, but the court denied the defendants' request.[8] By failing to plead the plaintiff's noncompliance as a special defense, the defendants did not properly apprise the court, or the plaintiff, of the issue. Indeed, "it is improper for a court, sua sponte, to apply an unpleaded special defense to defeat a plaintiff's cause of action." *Howard-Arnold, Inc.* v. *T.N.T. Realty, Inc.*, supra, 145 Conn. App. 712.

Furthermore, the plaintiff was not apprised that questions of noncompliance with HUD regulations were at issue in the present case. See *Oakland Heights Mobile Park, Inc.* v. *Simon*, 36 Conn. App. 432, 436–37, 651 A.2d 281 (1994) ("[i]t would be fundamentally unfair to allow any defendant to await the time of trial to introduce an unpleaded defense . . . [and] would result in 'trial by ambuscade' to the detriment of the opposing party"). Thus, the defendants had the affirmative duty to plead the special defense of the plaintiff's noncompliance with the HUD regulations and, by failing to assert that special defense, waived it. Consequently, they may not challenge the plaintiff's compliance on appeal.[9]

Because the plaintiff did not bear the burden of proving compliance with the HUD regulations as a condition precedent to bringing this foreclosure action, the court's finding that the plaintiff had proven its case was

not clearly erroneous.[10]

## II

The defendants next challenge the court's finding that they failed to prove the special defense of equitable estoppel. The defendants argue that there was uncontroverted documentary evidence establishing that the plaintiff intentionally caused the defendants to believe that the only payments necessary for a permanent mortgage modification were those set forth in the forbearance agreement, the plaintiff intentionally concealed the true fact that judgment liens would need to be satisfied because it had actual knowledge of the judgment lien, and the defendants relied to their detriment on misleading conduct of the plaintiff by accepting the agreement and beginning to make trial payments. The plaintiff argues that the defendants have failed to establish that the court's finding that the defendants failed to prove their equitable estoppel defense was clearly erroneous. We agree with the plaintiff.

"We begin with the standard of review applicable to claims of equitable estoppel. The party claiming estoppel—here, the defendant—has the burden of proof. . . . Whether that burden has been met is a question of fact that will not be overturned unless it is clearly erroneous. . . . A court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there *is* evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . The legal conclusions of the trial court will stand, however, only if they are legally and logically correct and are consistent with the facts of the case. . . . Accordingly, we will reverse the trial court's legal conclusions regarding estoppel only if they involve an erroneous application of the law." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Fischer* v. *Zollino*, 303 Conn. 661, 667–68, 35 A.3d 270 (2012).

"[T]raditional mortgage foreclosure standards . . . permit the assertion of certain special defenses, including that of equitable estoppel. . . . The doctrine of equitable estoppel is well established. [W]here one, by his words or actions, intentionally causes another to believe in the existence of a certain state of things, and thereby induces him to act on that belief, so as injuriously to affect his previous position, he is [precluded] from averring a different state of things as existing at the time. . . . [I]n the context of an equitable estoppel claim . . . [t]here are two essential elements to an estoppel: the party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do something to his injury which he otherwise would not have done. Estoppel rests on the misleading conduct of one

party to the prejudice of the other. . . . Broadly speaking, the essential elements of an equitable estoppel . . . as related to the party to be estopped, are: (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts." (Citation omitted; internal quotation marks omitted.) *TD Bank, N.A.* v. *M.J. Holdings, LLC*, 143 Conn. App. 322, 337–38, 71 A.3d 541 (2013).

The defendants claim that the plaintiff "intentionally caused the defendants to believe in the existence of a certain state of things, i.e., that the only financial payments the defendants needed to make to qualify for a permanent loan modification were the three trial period payments." (Internal quotation marks omitted.) Furthermore, the defendants argue that the representations in the agreement were intended to induce the defendants to believe in the existence of those facts and that the plaintiff had knowledge, actual or constructive, of the real facts because any requirement that satisfaction of a lien as a prerequisite to a permanent mortgage modification existed at the time that the forbearance agreement was offered. In sum, the defendants claim that the conduct of the plaintiff's loan servicing department resulted in their inability to afford the payoff for the judgment lien because they continued to make the trial period payments each month in the amount of $3009.07 through May, 2013.

The defendants' claim is without merit. The defendants fail to point to specific conduct of the plaintiff that caused the defendants to believe that they only had to pay three trial period payments for a permanent loan modification. The agreement specifically stated that "investor approval is still pending" and that "the lender is under no obligation to enter into any further agreement, and this [a]greement shall not constitute a waiver of the lender's right to insist upon strict performance in the future."

Lorson testified that he was unaware that the three payments would not result in a final loan modification. Lorson stated: "No, I was not aware of that. My understanding was, the forbearance agreement was, once we got into that, as long as I held up my end of the agreement when I made the payments I would get the mortgage modification." The plaintiff, however, sent the defendants a letter in October, 2012, before the defendants had made their second of the three required trial payments, informing them that their loan modification could not be completed unless the judgment lien was resolved. The defendants acknowledged receipt of

that letter, but explained that they continued to make the trial period payments because they were "assuming that [they would] be able to resolve the issue with the lien and continue on and get the modification, and [they] didn't want to screw that up by not making the payments." Consequently, the evidence specifically contradicts the defendants' claim that the plaintiff represented to the defendants that the loan modification necessarily would be final once the three trial payments were complete. Accordingly, the defendants have failed to establish that the court's finding that they did not present sufficient evidence to establish that their special defense of equitable estoppel was clearly erroneous.

## III

The defendants' final claim is that the court's finding that the defendants failed to present sufficient evidence with respect to the special defense of unclean hands was clearly erroneous. The defendants argue that the testimony of the plaintiff's employee and the uncontroverted documentary evidence clearly establishes that the plaintiff was aware of all the HUD requirements that it was obligated to satisfy before commencing this foreclosure action. The defendants maintain that the complete failure to comply with almost all of said requirements raises a necessary inference that the plaintiff's conduct in simply ignoring its obligations was wilful and committed in bad faith. We disagree.

Our Supreme Court has recognized that the "[a]pplication of the doctrine of unclean hands rests within the sound discretion of the trial court. . . . The exercise of [such] equitable authority . . . is subject only to limited review on appeal. . . . The only issue on appeal is whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of [the trial court's] action. . . . Whether the trial court properly interpreted the doctrine of unclean hands, however, is a legal question distinct from the trial court's discretionary decision whether to apply it." (Citations omitted; internal quotation marks omitted.) *Thompson* v. *Orcutt*, 257 Conn. 301, 308–309, 777 A.2d 670 (2001). "The court's factual findings underlying the special defense of unclean hands, however, are reviewed pursuant to the clearly erroneous standard." *Monetary Funding Group, Inc.* v. *Pluchino*, 87 Conn. App. 401, 406, 867 A.2d 841 (2005).

"[W]e note that an action to foreclose a mortgage is an equitable proceeding. . . . It is a fundamental principle of equity jurisprudence that for a complainant to show that he is entitled to the benefit of equity he must establish that he comes into court with clean hands. . . . The clean hands doctrine is applied not for the protection of the parties but for the protection of the court. . . . It is applied not by way of punishment but

on considerations that make for the advancement of right and justice. . . . The doctrine of unclean hands expresses the principle that where a plaintiff seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue. . . . Unless the plaintiff's conduct is of such a character as to be condemned and pronounced wrongful by honest and fair-minded people, the doctrine of unclean hands does not apply. . . .

"Because the doctrine of unclean hands exists to safeguard the integrity of the court . . . [w]here a plaintiff's claim grows out of or depends upon or is inseparably connected with his own prior fraud, a court of equity will, in general, deny him any relief, and will leave him to whatever remedies and defenses at law he may have." (Citations omitted; internal quotation marks omitted.) *Thompson* v. *Orcutt*, supra, 257 Conn. 310. "The party seeking to invoke the clean hands doctrine to bar equitable relief must show that his opponent engaged in wilful misconduct with regard to the matter in litigation. . . . The trial court enjoys broad discretion in determining whether the promotion of public policy and the preservation of the courts' integrity dictate that the clean hands doctrine be invoked." (Internal quotation marks omitted.) *Emigrant Mortgage Co.* v. *D'Agostino*, 94 Conn. App. 793, 804, 896 A.2d 814, cert. denied, 278 Conn. 919, 901 A.2d 43 (2006).

The court concluded that the defendants failed to prove their special defense of unclean hands. Thus, we review the court's findings of fact underlying the special defense of unclean hands pursuant to the clearly erroneous standard.

Here, the defendants did not present any evidence to support their special defense that the plaintiff acted with unclean hands. As indicated in part I of this opinion, the plaintiff introduced evidence of compliance with the HUD regulations through the testimony of Green. See footnote 6 of this opinion. The defendants, however, presented no evidence to the contrary.

Additionally, the defendants allege in their brief that they were "induced to begin trial period payments by the misleading conduct of [the] plaintiff's employees in issuing the forbearance plan without first telling them that they would need to pay off the judgment lien."[11] There is evidence in the record, however, that the agreement explicitly provided that a loan modification was subject to final approval. Furthermore, the plaintiff sent the defendants multiple letters, beginning early on in the trial period, informing them that they would not receive a final loan modification until the judgment lien was resolved. The court, accordingly, reasonably could conclude from this evidence that the plaintiff did not engage in wilful misconduct and thus, such a conclusion was not clearly erroneous.

On the basis of our review of the record, we therefore conclude that the court properly acted within its discretion when it refused to apply the doctrine of unclean hands on the basis of the facts that it found.

The judgment is affirmed and the case is remanded for the purpose of setting a new law day.

In this opinion the other judges concurred.

[1] The payment arrangement in the agreement required payments on September 22, October 22 and November 22, 2012. This was the second forbearance agreement that the parties entered into. Prior to filing the present action, the plaintiff provided the defendants an opportunity to enter into a special forbearance agreement, which provided that the defendants would make three monthly payments. The defendants subsequently did not comply with the required payments in that agreement.

[2] The plaintiff's position is that "without payment of [the judgment] lien . . . although [the judgment lien] had no priority over [the plaintiff] at the time, if there was a mortgage modification, [the judgment lien] would have acquired priority, which is why [the plaintiff] required that it be paid off or subordinated."

[3] The plaintiff's March 4, 2013 letter requested "documentation within ten (10) business days of the date of this letter" and cautioned that without the documentation, the plaintiff would be required to deny the defendants' request for a modification to the loan.

[4] The FHA provides mortgage insurance on loans made by FHA approved lenders throughout the United States and its territories. See United States Department of Housing and Urban Development, available at https://www.hud.gov/program offices/housing/fhahistory (last visited July 3, 2018). Congress created the FHA with the passage of the National Housing Act of 1934 and the FHA became a part of HUD in 1965. 42 U.S.C. § 3534 (a) (2012). "The FHA provides lenders with protection against losses as the result of homeowners defaulting on their mortgage loans. The lenders bear less risk because [the] FHA will pay a claim to the lender in the event of a homeowner's default. Loans must meet certain requirements established by [the] FHA to qualify for insurance." United States Department of Housing and Urban Development, available at https://www.hud.gov/program offices/housing/fhahistory (last visited July 3, 2018). HUD promulgated regulations pertaining to FHA insured mortgages pursuant to its authority conferred by Congress. 12 U.S.C. § 1701 et seq. (2012); see *Pfeifer* v. *Countrywide Home Loans, Inc.*, 211 Cal. App. 4th 1250, 1265, 150 Cal. Rptr. 3d 673 (2012). The regulations regarding a mortgagee's servicing responsibilities for such mortgages are codified in title 24, part 203 (Single Family Mortgage Insurance), subpart C (Servicing Responsibilities) of the Code of Federal Regulations. 24 C.F.R. §§ 203.500 through 203.681 (2017); see *Lacy-McKinney* v. *Taylor, Bean & Whitaker Mortgage Corp.*, 937 N.E.2d 853, 860 (Ind. App. 2010). Servicers are required to comply with such regulations prior to initiating foreclosure on FHA insured mortgages. *Pfeifer* v. *Countrywide Home Loans, Inc.*, supra, 1266 ("[f]or mortgages insured by the FHA, servicers are required to follow servicing regulations mandated by the HUD Secretary before initiating foreclosure").

[5] The defendants do not contest the propriety of the court's denial of their request to amend their answer.

[6] The following colloquy occurred between the defendants' counsel and Green:

"[The Defendants' Counsel]: . . . Do you have documents in this loan administration showing compliance with the HUD regulations?

"[Green]: Yes."

[7] Florida's Fifth District Court of Appeals has held that compliance with certain HUD regulations is a condition precedent to bringing a foreclosure action and that the burden rests with the plaintiff to prove compliance with conditions precedent if asserted in the complaint and specifically denied in accordance with Florida Rule of Civil Procedure 1.120 (c) in the answer, but shifts to the defendants if raised instead as an affirmative defense in the answer. See *McIntosh* v. *Wells Fargo Bank, N.A.*, 226 So. 3d 377, 379 (Fla. App. 2017); *Palma* v. *JPMorgan Chase Bank*, 208 So. 3d 771, 775 (Fla. App. 2016); Fla. R. Civ. P. 1.120 (c) (denial of conditions precedent "shall be made specifically and with particularity").

In this case, the defendants did not raise noncompliance with HUD regula-

tions in their answer by denial or by a special defense. Because the defendants provided no notice of such a defense in their answer, we decline to address the burden-shifting suggested by the Fifth District Court of Appeals.

[8] As previously stated, the defendants do not contest the propriety of the denial of the request to amend on appeal. See footnote 5 of this opinion.

[9] In their reply brief, the defendants state that they introduced evidence on the issue of the plaintiff's noncompliance with the HUD regulations and cite to court's exhibit I, which is a photocopy of title 24, part 203, subpart C of the Code of Federal Regulations. Because the evidence was admitted and the plaintiff did not object to the introduction of the HUD regulations into the record, the defendants argue that the plaintiff has waived any alleged failure to plead noncompliance with the regulations as a special defense. "It is well established that a failure to allege a special defense is waived if evidence relating to that special defense is admitted without objection." *Sidney* v. *DeVries*, 18 Conn. App. 581, 587, 559 A.2d 1145 (1989), aff'd, 215 Conn. 350, 575 A.2d 228 (1990). "[W]hen a matter required to be specially pleaded by a party is fully litigated at trial without objection from the opposing party, the latter's objection to the special pleading requirement is deemed to have been waived." *Parente* v. *Pirozzoli*, 87 Conn. App. 235, 241, 866 A.2d 629 (2005). The failure to plead a special defense, however, was not waived here by the mere admission of the HUD regulations as an exhibit. The HUD regulations are simply regulations, and not themselves evidence of the plaintiff's noncompliance. Thus, the issue of noncompliance with the HUD regulations was not fully litigated at trial. Because the defendants did not introduce any evidence of the plaintiff's noncompliance with the HUD regulations, they have failed to establish that the plaintiff's objection has been waived.

[10] Even if we were to assume that the defendants properly presented this claim to the trial court and that the plaintiff had the burden of proving compliance with all HUD regulations, the defendants fail to establish that the court's determination that the plaintiff established its prima facie case was clearly erroneous. The defendants appear to suggest that the plaintiff presented no evidence that it complied with any of the HUD regulations and that the evidence established that the plaintiff failed to comply with the regulations in several crucial respects. In fact, evidence was presented to the contrary; see footnote 6 of this opinion; and the defendants failed to present any evidence of the plaintiff's noncompliance with the HUD regulations through their own witness or through cross-examination of Green. With evidence in the record of the plaintiff's compliance and no evidence presented to the contrary, the court's finding that the plaintiff established its prima facie case was not clearly erroneous.

[11] The defendants contend that if they knew "that they did not need to make extra monthly mortgage payments past the trial period, they could have afforded the payoff [of] the judgment lien and therefore obtained the permanent modification that would have prevented the prosecution of the foreclosure action."